CITY OF DULUTH v. DULUTH STREET-RAILWAY COMPANY.[1]

February 1, 1895.

No. 9004.

**Constitution—Amendment.**

The amendment to the constitution proposed by Laws 1881, c. 3, prohibiting special and private legislation on certain subjects, did not take effect, as a part of the constitution, before the official canvass of the vote.

**Words—Meaning of "Oneota."**

The word "Oneota," in defendant's charter (Sp. Laws 1881, Ex. Sess., c. 200), construed to refer to the village or hamlet known by that name, and not to the municipal township of Oneota.

**Street Railways—Village Ordinance.**

Ordinance No. 38 of the village of West Duluth construed, and *held* that, in the construction and operation of all its railway lines, the defendant is

---

[1] Reported in 62 N. W. 267.

subject to all the conditions and regulations of the ordinance, whether such lines are within or without the territory in which it was authorized to construct and operate railway lines under its charter.

Action by the village of Duluth to recover certain sums under the provisions of a village ordinance which had been accepted by the defendant. After consolidation with the village, the city of Duluth was substituted as plaintiff. The first cause of action stated was for the amount paid for extra work of paving a certain street, on account of the tracks and rails of the defendant. The second cause of action is stated in the opinion. The third cause of action was for the amount of the annual license fee prescribed by the ordinance. The answer set up the franchise act mentioned in the opinion, and alleged that all the territory covered by defendant's lines of railway was included in Oneota, mentioned in the first section of that act. At the trial the parties stipulated that the court should take judicial notice of the plat of the hamlet of Oneota, and its relation to the remaining lands in the township of Oneota, and also of the boundaries of the township of Oneota. The court directed a verdict for the plaintiff upon the first and third causes of action. Upon the second cause of action the jury returned a verdict for the plaintiff. Appeal by defendant from an order of the district court for St. Louis county, Moer, J., denying its motion to set aside the verdict and for a new trial. Affirmed.

*Billson, Congdon & Dickinson,* for appellant.

*H. H. Phelps,* for respondent.

MITCHELL, J. The questions presented by this appeal are (1) the validity and construction of defendant's franchise act (Sp. Laws 1881, Ex. Sess., c. 200), entitled "An act confirming certain rights upon the Duluth Street-Railway Company"; and (2) the construction of the West Duluth Ordinance No. 38, entitled "An ordinance granting to the Duluth Street-Railway Company the right to construct, maintain, and operate street railways in the village of West Duluth," approved July 14, 1891.

1. Plaintiff's contention is that the so-called "franchise act" is invalid, because in violation of the constitutional amendment of 1881, prohibiting special or private legislation granting any special or ex-

clusive privilege, immunity, or franchise. The correctness of this
contention depends upon when this amendment took effect. The act
in question was enacted after the election at which the people voted
upon the amendment, but before the vote was canvassed or the re-
sult proclaimed by the governor. Section 1, art. 14, of the consti-
tution, relating to amendments to the constitution, provides that,
"if it shall appear in a manner to be provided by law, that a major-
ity of voters present and voting shall have ratified such alterations
or amendments, the same shall be valid to all intents and purposes,
as a part of the constitution." The manner in which it shall be
made to appear that the proposed amendment has been ratified by
the people is thus left to be provided by law; and that this shall
be made to appear in the manner provided by law is clearly made
a prerequisite to the force and validity of the amendment as a part
of the constitution. The manner provided by law by which this
was to be made to appear in this instance was incorporated in the
act by which this proposed amendment was submitted to the peo-
ple (Laws 1881, c. 3, § 2), and is substantially the same as the provi-
sions embodied in every act ever passed for the submission of a pro-
posed constitutional amendment to the people of the state. We are
clear that this amendment did not take effect at least until the re-
sult was ascertained by the canvass of the vote. Whether it took
effect then, or only upon the subsequent proclamation of the result
by the governor, it is not necessary to decide. The act, having been
enacted before the constitutional amendment took effect, is valid.

2. The act in question granted to the defendant the right to con-
struct and operate its railway lines in the streets of Duluth and
its suburbs, "including New London and Oneota and the roads con-
necting the same." In the light of the stipulated facts, we are of
opinion that the word "Oneota," as used in this act, must be con-
strued as referring to the platted hamlet or village known by that
name, and not to the municipal township of Oneota, which included
one congressional township and part of another, and was afterwards
included in the corporate limits of the village of West Duluth.
There was no such municipality as "New London," but only a little
hamlet or village known by that name, east of Duluth, just as the
little hamlet or village of Oneota was situated west of it. The two
terms "New London" and "Oneota" were evidently used in the

same way, and referred to the two hamlets known by these names respectively. The materiality, if any, of this, arises out of the fact that the territory (all the streets of the village of West Duluth) in which the defendant was authorized by the ordinance of 1891 to construct and operate its railway lines was more extensive than that in which it was authorized to construct and operate its lines by the act of 1881; and that, although all of defendant's railway line now under consideration was authorized by the ordinance, only part of it was authorized by the act of the legislature. Whether the act of 1881 is broad enough to authorize the construction of a "trolley electric street railway," which requires the setting of poles and the stringing of wires in the streets, is a question which we do not find it necessary to consider or decide.

3. Section 4 of the village ordinance provides, in substance, that the defendant shall keep the surface of the street inside its rails, and six inches outside its tracks, and, where it has a double track, the space between its tracks, in good order and repair; and that, in case it fails or neglects to obey any order of the village council in relation thereto, the council may cause the same to be done, and collect the expense thereof from the street-railway company. The plaintiff's second cause of action is based on this provision of the ordinance. The contention of the defendant is that this does not apply, at least to such part of its railway lines as it was authorized to construct and operate under the act of 1881, because that act imposes no such duty upon it, and the ordinance expressly provides that "no right or franchise now owned or enjoyed by said company shall be forfeited or prejudiced by said acceptance"; that is, by defendant's acceptance of the ordinance.

If this provision of the ordinance is to be given the effect claimed for it by the defendant, then the contract between the village and the street-railway company was not only one-sided and unreasonable, but in its terms inconsistent with itself. Here was the railway company asking for and receiving certain rights and privileges not already possessed by it. The ordinance granted these rights and privileges, and specified the terms and conditions upon and subject to which they were granted. This ordinance, when accepted, constituted the contract between the village and the company. Not only did it define generally the rights and liabilities of the company,

but provided minutely and specifically the exact regulations and conditions under which it was to construct and operate its lines. It specified the kind of rails it should use, the way they should be laid in the streets, the repairs that should be made, the way the snow and ice should be disposed of, the speed at which the cars should be run, the kind of men that should be employed by the company, that proper diligence should be used to prevent passengers from being injured, that conductors should call out the names of the streets, that lights of certain colors should be exhibited on the cars at certain hours, etc. It could not have been the intention that the provisions of the ordinance should be operative on one part of the street-railway line, and not on another,—for example, that the company should not run its cars exceeding a certain rate of speed over one part of its line, but might do so over another; that lights should be kept on its cars on one part of its line, and not on another, etc. But it is just as reasonable to suppose that these things were intended as to suppose that it was intended that the railway company should keep the street between its rails in repair on one part of its line, and not on another. Indeed, the logic of defendant's position would lead to the result that none of the terms of the ordinance are applicable to any part of its lines which it was authorized to operate and construct under the act of 1881, whenever the ordinance imposes any duties on the company which were not imposed upon it by the legislative act. Such, clearly, was not the meaning of the ordinance. Both in the grant of rights and privileges and in the imposition of duties and liabilities, its provisions were intended to be coextensive with and applicable to the entire street-railway system of the defendant, as a unit, "in any of the streets of West Duluth."

If this proviso or saving clause means what defendant claims, it must be rejected as void, because repugnant with the enactment. It would fall within the principle stated by Lord Coke that, "when the enactment and its saving clause are repugnant,—as where a statute vests a manor in the king, saving the rights of all persons, or vests in him the manor of A., saving the rights of A.,—the saving clause is to be rejected, because otherwise the enactment would have been made in vain." Walsingham's Case, 2 Plowd. 565; End. Interp. St. §§ 184, 185.

The only construction that can be placed upon this clause consistent with the enactment or purview of the ordinance is that the defendant's acceptance of the ordinance should not forfeit or prejudice its "corporate franchise," strictly so called, as distinguished from its "powers." But in building and operating any part of its lines, whether authorized or not by the act of 1881, the company is subject to all the terms and conditions of the ordinance, including those in relation to keeping the streets in repair.

Order affirmed.