(21 App. Div. 101.)

PEOPLE ex rel. ELDRED v. PALMER, Secretary of State.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

OFFICERS—EXTENSION OF TERM—CONSTITUTIONAL LAW.

　　A district attorney of Kings county was elected at the general election of November, 1895, his term to commence on January 1, 1896, at which date the term of his predecessor expired. Apart from the question of the effect of subsequent legislation, his term would continue for two years.

Laws 1892, c. 686, art. 10, § 200; Const. art. 1, § 16; Id. art. 10, § 1; Id. art. 12, § 3. On May 20, 1896, Laws 1896, c. 772, was passed, continuing his tenure of office until December 31, 1899, and fixing the election of his successor for the annual election next preceding that date for a term of four years. This act was passed in the exercise of supposed authority conferred by Const. art. 10, § 1, which went into effect January 1, 1895, providing, among other things, that district attorneys in Kings county "shall be chosen by the electors once in every two or four years as the legislature shall direct." *Held*, that this did not authorize the legislature to extend the term of such officer, after his election, and therefore the act was unconstitutional in this respect; and the term of said district attorney expires at the end of the two years' term, and his successor is to be voted for at the election of November, 1897. Const. art. 10, §§ 1, 2; Id. art. 12, § 3.

Appeal from special term.

Mandamus by the people, on the relation of Frederick Eldred, Jr., against John Palmer, secretary of state. The relator's motion for a writ of mandamus was denied, and he appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

Nathaniel H. Clement and Isaac M. Kapper, for appellant.

Joseph A. Burr, John M. Ward, and Herman Baker, for respondent.

HATCH, J. The public interests seem to require a speedy disposition of the questions presented by this appeal. Their importance demands the most careful consideration. The time at our disposal, however, leaves but little opportunity to state with fullness and precision the reasons which have produced the conviction in our minds that the appellant's contention must be upheld, the order appealed from reversed, and the writ asked for granted. The questions raised require the construction of an act of the legislature (Laws 1896, c. 772, § 1), in connection with certain constitutional provisions providing for the separation of municipal from the general state and federal elections. It seems clear that by the adoption of the constitution of 1894 the people indicated an unmistakable intent to adopt, as the policy of the state, a plan by which the selection of municipal officers, so far as the time of their selection is concerned, might be unfettered by the consideration of questions affecting the selection of general governmental officers. Whatever may be the practical result of such plan, the constitutional intent seems to be clear. This scheme is formulated in the provisions contained in section 1 of article 10, and section 3 of article 12, of the constitution. The first of these sections, so far as important to the present questions, is as follows:

"Section 1. Sheriffs, clerks of counties, district attorneys, and registers in counties having registers, shall be chosen by the electors of the respective counties, once in every three years and as often as vacancies shall happen, except in the counties of New York and Kings, and in counties whose boundaries are the same as those of a city, where such officers shall be chosen by the electors once in every two or four years as the legislature shall direct."

The second is as follows:

"Sec. 3. All elections of city officers, including supervisors and judicial officers of inferior local courts, elected in any city or part of a city, and of county officers elected in the counties of New York and Kings, and in all counties whose boundaries are the same as those of a city, except to fill vacancies, shall be held on the Tuesday succeeding the first Monday in November in an odd-

numbered year, and the term of every such officer shall expire at the end of an odd-numbered year. The terms of office of all such officers elected before the first day of January, one thousand eight hundred and ninety-five, whose successors have not then been elected, which under existing laws would expire with an even-numbered year, or in an odd-numbered year and before the end thereof, are extended to and including the last day of December next following the time when such terms would otherwise expire; the terms of office of all such officers, which under existing laws would expire in an even-numbered year, and before the end thereof, are abridged so as to expire at the end of the preceding year. This section shall not apply to any city of the third class, or to elections of any judicial officer, except judges and justices of inferior local courts."

These provisions of the constitution were adopted in 1894, and took effect January 1, 1895. Prior to their adoption the provision of law determining the tenure of office of the district attorney of Kings county limited the term to three years from and including the 1st day of January succeeding his election. Laws 1892, c. 686, art. 10, § 200. It appears to be conceded that the effect of the adoption of the provisions of the constitution above referred to, and of article 1, § 16, of the constitution, was to change and abrogate the statute fixing the term of office of the district attorney of Kings county, making the term thereafter dependent upon the provision of the constitution, or as the legislature should direct in obedience to its mandate. At the general election held in November, 1895, Foster L. Backus was elected district attorney of the county of Kings, his term to commence on the 1st day of January, 1896, upon which date the term of the preceding district attorney expired. Mr. Backus duly qualified, and entered upon the discharge of his duties on the 1st day of January, 1896, and has ever since, and is now, administering the affairs of said office. No act of the legislature had been had after the adoption of the constitutional provisions above referred to, fixing the term of office of the district attorney of Kings county, prior to the election and entering upon the duties of said office by the present incumbent. Subsequently, and upon May 20, 1896, the act heretofore referred to was passed, and by its terms the tenure of office of the then incumbent was continued until the 31st day of December, 1899, and the election of his successor was fixed for the annual election to be held next preceding the said 31st day of December, 1899, for a term of four years. We have, therefore, to consider whether this act was a valid exercise of legislative power. We have said that the scheme of the constitution was to separate municipal elections from federal and state elections. In order to accomplish this end, provision was made for holding the former election in odd and the latter in even years. It is a significant fact that the constitutional convention was careful to provide, in article 12, § 3, for existing incumbents of offices affected by this change of policy. While power exists in the legislature to abridge a term of office, there is no power, short of the sovereign will, which can extend a term of office the incumbent of which is selected by the people. As the term of the office affected by the proposed change would in some instances, expire before the odd year in which municipal elections could be held, the constitution (that being the only power which could effect an extension of a term) provided for such extension. By extending the term as to some and abridging it as to

others, the whole number throughout the state was made to fall in the odd year. Most careful provision was made by the framers of the constitution to accomplish the end sought, and set in harmonious operation the proposed plan. This action seems to indicate that it was the purpose of the constitution, so far as it was possible or practicable for that instrument to do so, to formulate a plan and provide for the tenure of office in accordance therewith, all of which should take place cotemporaneously with the operative effect of the instrument. In pursuance of this plan, it was provided by article 10, § 1, that sheriffs, clerks of counties, district attorneys, and registers in the county of Kings should be chosen by the electors of such county "once in every two or four years, as the legislature shall direct." It is now insisted that the authority thus conferred upon the legislature authorized it to declare the term of the office of district attorney at any time within four years after his election. And this view is supported by the argument that, the constitution having vested in the legislature the power to declare the term, the election of the officer by the people, in the absence of such declaration, is for an indefinite term within the maximum limit of the constitution, subject to a subsequent declaration by the legislature fixing that term. We are of opinion that this argument cannot be sustained. Vesting in the legislature power to determine the tenure of certain officers elected by the people is not new to the constitution of 1894, but has found place in prior constitutions, and has been the subject of judicial construction by the courts. The constitution of 1846 (article 6, § 18) provided that "all judicial officers of cities and villages, and all such judicial officers as may be created therein by law, shall be elected at such time and in such manner as the legislature may direct." Article 10, § 2, of the present constitution is a copy of the same section found in the constitution of 1846. This section provides for three classes of officers, who shall be selected or designated as the legislature shall direct. But under these constitutional provisions it has been uniformly held (indeed, no authority is produced to the contrary) that this grant of power does not work a change in the term of office of a constitutional officer in office at the time by the suffrage of the people. Where the legislature is empowered by the people to fix the term of an office, the declaration of such term must precede the selection of such officer, and it may not be done after he has been installed in office. This rule has been held in respect of a statutory office filled by an election by the people. People v. Bull, 46 N. Y. 57. The opinion of Judge Folger upon this branch of the case is exhaustive, instructive, and conclusive. We quote an extract:

"When the constitution reserves the power to the people of electing an officer, and thus impliedly forbids the legislature to appoint him, it means that he and the filling of his office shall be subject to the will of the people, and to it alone. It, at the same time, gives the legislature power to declare the duration of the office. But doing that, it means no more than that, be the time what it may, and altered in duration when it may, the incumbent shall be the creature of the people. And thus it guards against a majority of the legislature, adverse in sentiment to a majority of the people of a locality, placing or continuing over them in official power one whom they would not select. It is not a question of abuse of power. No such power is conferred upon the legislature. The continuance in office by enactment extending the term thereof

of one who has, in the first place, been elected to it, is not properly the exercise of the power to declare the duration of an office. In any proper sense where the office is to be filled by one authority, and the duration of the term thereof is to be determined by another, the declaration of the duration must go before the filling, so that each authority may have its legitimate exercise. And the power to declare the duration is completely exercised, and for the time exhausted, when it announces the duration of the term. When it goes further, and declares not only the duration of the term, but who shall fill the office for that term, it has invaded the province of another authority. The legislature may declare, from time to time, and as often as it sees fit, what shall be the length of the term of this office; but when it designates the one who shall hold the office it has usurped the power of the people, and its act in that regard is void."

Other cases express a like doctrine. People v. McKinney, 52 N. Y. 374; People v. Crooks, 53 N. Y. 648; People v. Foley, 148 N. Y. 677, 43 N. E. 171; Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. 15; People v. Randall, 151 N. Y. 497, 45 N. E. 841.

We are unable to find in the present grant of power by the constitution to the legislature any evidence of an intent to change the rule of construction which has been uniformly applied to language conferring similar authority. Indeed, we find evidence of an intent in the constitutional provisions themselves to adhere rigidly, in this regard, to the settled policy of the state, as indicated by uniform action, constitutional provision, and judicial construction. As we have before pointed out, the framers of the constitution made careful provision for the harmonious operation of the scheme evolved therein. Opportunity was given for legislative action, so far as it was needful, before the term of any officer affected thereby began. A faithful observance of these provisions, and a proper exercise of the power conferred, left no room for question or cavil, but created a uniform system and an harmonious scheme. It may be within the power of the people—undoubtedly is—to provide for the election of an officer for any specified time, or create a life tenure, or provide by election for an indefinite term. But it is equally true that it is opposed to the genius of our institutions to elect an officer for life, and the history of the country will be searched in vain to find an indefinite term provided for an elective office. At least none is called to our attention, and the omission is not supplied by our research or recollection. It is contended here, however, by the learned counsel for the respondent, in his ingenious brief, and in his able presentation of the case, that until there was the legislative declaration, which the act under consideration contained, the term of Mr. Backus was indefinite, within the maximum limit of the constitution, and that the people in voting for him said, "I vote for this man for this office for such period between a maximum and minimum point as the legislature shall subsequently fix and direct." We think that this argument ignores the constitutional provision under which the office is provided and the term defined. Its language is that the officer shall be chosen by the electors of the county "once in every two or four years, as the legislature shall direct." If there had been no legislative declaration at all, the term would not have been indefinite, for by the provision of the constitution itself it would have been for one term or the other, either two or four years. The constitution is self-executing to the

extent of declaring what the term, in the absence of legislative declaration, shall be. People v. Roberts, 148 N. Y. 360, 42 N. E. 1082; Chittenden v. Wurster, 152 N. Y. 345, 46 N. E. 857; Cooley, Const. Lim. p. 99. It was not, therefore, necessarily essential, for the purpose of rendering definite the term, that there should have been any legislative declaration at all. It is the province of the courts to determine what the term was to which the incumbent was elected, upon failure of the legislature to act, and to construe this provision of the constitution. It is said that the term was indefinite in the sense that it might be limited to two and might extend to four years. We may safely assume that it is the policy of our system of government not to elect to indefinite terms, and may properly consider them as repugnant to our institutions. An able writer on the constitution has said: "It may, therefore, be safely laid down as a fundamental axiom of republican governments that there must be a dependence on, and responsibility to, the people, on the part of the representative, which shall constantly exert an influence upon his acts and opinions, and produce a sympathy between him and his constituents;" and that "frequent elections are unquestionably the soundest, if not the sole, policy by which this dependence and sympathy and responsibility can be effectually secured." Story, Const. p. 438, § 587; Id. § 588 et seq. Mr. Webster has said that among the fundamental principles of American suffrage is that its exercise shall be prescribed by previous law. Paine, Elect. § 3, p. 2; People v. Keeler, 17 N. Y. 370. The policy of the law, therefore, where the term is doubtful, resolves itself into a construction of the provision which will return the office again to the people in the shortest time. Throop, Pub. Off. § 308; Wright v. Adams, 45 Tex. 135. Applying this principle to the construction of this constitutional provision, we are convinced that its proper construction is that the term for which Mr. Backus was elected was two years. And within the doctrine of People v. Bull, supra, and kindred cases, this constitutional provision was the only provision of law under which he could be elected, and for this term the people elected him. By virtue of the same authority, we conclude that the act operated not as a lawful exercise of power to fix the length of a term, but as an extension of his term of office beyond the time to which the people had elected him, and the same was of no effect, and void. Judge Gray said, in Rathbone v. Wirth, 150 N. Y. 474, 45 N. E. 19: "In passing upon the validity of an act, we are to consider what is possible, and what may be done under its authority." Judge Earl said, in Stuart v. Palmer, 74 N. Y. 188: "The constitutional validity of law is to be tested, not by what has been done under it, but by what may. by its authority, be done." The rule for the construction of statutes and the construction of constitutions is the same. The grant of power, therefore, conferred upon the legislature by this provision of the constitution, is to be measured, in determining whether it is properly exercised or not, by what may be done under it. Article 10, § 1, of the constitution provides, as we have already seen, for the election of sheriffs, clerks, and registers in addition to a district attorney. These offices have not been filled since the constitution took effect, nor the time fixed, al-

though three sessions of the legislature have passed. If this legislation can be upheld, it will be entirely competent for the next legislature to fix the terms of the incumbents after they are elected. Nor need the terms be made equal in point of time. The only mandate of the constitution in this respect is that the term shall end in an odd year. It is, therefore, entirely competent for the legislature to fix the term of the sheriff for four years, and the term of the clerk for two, or reverse it. Such condition found express condemnation in the language of Judge Folger in the Bull Case, supra:

"If the legislature may take from the people of a locality the power, at properly returning occasions, of electing certain officers, it effectually draws to itself the power of filling those offices; for there is nothing to prevent its distinguishing in the offices, and continuing in office, by an extension of term, those whom it favors, and leaving to the chances of a popular election those for whom it does not care." 46 N. Y. 62, 63.

There can be no difference, either in fact or principle, between the present case and the Bull Case, so far as the exercise of power is concerned, to extend one office and limit another. The exercise of such power, or the possibility of its exercise, is matter for condemnation, and is outside the grant of legislative power contained in the constitution. This leads us to the conclusion that the act in question cannot be upheld as a valid exercise of legislative power.

Claim is made that, even though the law be invalid, no vacancy is created which can presently be filled by an election, for the reason that the law is nevertheless good as fixing the time of election of the present incumbent's successor. The respondent cites the Bull Case in support of his contention. The case has no application. That was a statutory office, the tenure of which had been extended, and no provision of law existed for holding an election at the time when the votes were given for the relator, and no provision was otherwise made except in the act itself; and, as the legislature was vested with authority to fix the time and manner of holding the election, this part of the act was upheld. In the present case the grant of power was to fix the term. As the legislature failed to act in time to effect that result, the constitution, as we have seen, operated to that end, and fixed the term, which will expire on the 31st day of December, 1897, creating a vacancy which the people become entitled to fill at the ensuing election.

It follows, from these views, that the order appealed from must be reversed, and a writ of mandamus ordered to issue as prayed for. All concur.