STATE ex rel. P. L. GETCHELL v. JOHN J. O'CONNOR.[1]

August 1, 1900.

Nos. 12,240—(270).

### Const. art. 4, § 36, Construed—Cities.

Section 36 of article 4 of the state constitution, as amended in 1898, construed, and *held* to apply to incorporated cities in existence at the time of its adoption, and not to cities to be thereafter incorporated.

### Title of Act—Proposed Amendment to Constitution.

Although a title to an act of the legislature proposing an amendment to the constitution is not necessary to the validity of the act, nevertheless the same may be looked to when construing and interpreting the section of the constitution to which it relates.

### Laws 1899, c. 351—Constitution.

Laws 1899, c. 351, *held* valid and constitutional.

[1] Reported in 83 N. W. 498.

## Const. art. 4, § 36—Framing City Charters.

The provisions of section 36, article 4, of the constitution, requiring the legislature to prescribe limits within which cities may frame their own charters, is sufficiently complied with when the legislature prescribes and imposes in that behalf such restrictions and limitations as are deemed by that body expedient and proper. It is not necessary that the legislature prescribe a general framework for the city charter.

## Charter of City of St. Paul.

The city charter of the city of St. Paul framed under and pursuant to Laws 1899, c. 351, and adopted May 1, 1900, by the qualified voters of such city, is valid, and became upon such adoption the law for the government of such city.

## Chief of Police.

*Held,* further, that relator is not entitled to the office of chief of police of said city, having been superseded by the appointment of respondent under the provisions of such new charter.

Writ of quo warranto issued from the supreme court requiring defendant to show by what warrant he assumed to act as chief of police of the city of St. Paul and why relator should not be adjudged entitled to said office. Writ quashed.

*E. E. McDonald, Walter L. Chapin* and *W. B. Douglas,* Attorney General, for relator.

Laws 1895, c. 4, and Laws 1897, c. 280, being section 36 of article 4 of the constitution, apply to all the cities and villages of the state. This amendment to the constitution is a close copy of those of Missouri, California and Washington. Const. (Cal.) art. 11, § 8; Const. (Mo.) art. 9, § 16; Const. (Wash.) art. 11, § 10. In order that the power may be exercised, it is necessary in all of those states that the cities shall have been otherwise first incorporated. State v. Warner, 4 Wash. 773, 775. The title to an act proposing a constitutional amendment in no way modifies or limits the body of the act or amendment. Julius v. Callahan, 63 Minn. 154. The title of the act proposing the amendment to allow "cities already incorporated and villages desiring to become incorporated as cities" to frame, etc., will not bear the construction sought to be placed on it. The word "already" is used in contradistinction to "villages" not as yet incorporated as cities. Cities may still be in-

corporated under the general law. The amendment adopted in 1896 and the one adopted in 1898 had the same title; and, as regards the reference to the cities and villages to which it applied, contained the same wording. The legislature of 1897 placed its construction on the first amendment when it enacted Laws 1897, c. 255. That legislature understood that the first constitutional provision, which is the same as the second in this respect, applied to any city or village in this state without reference to when it was incorporated, and so framed the first enabling act. Laws 1897, c. 255, is an interpretation that the amendment covers all cities. The enabling act of 1897 must, under all rules of constitutional construction, be held bad as special legislation. It is held in Missouri that the constitution covers cities existing under general as well as special laws or charters, and that the charter to be superseded is the organic city law then existing whether by general or special law. State v. Field, 99 Mo. 352; Kansas City v. Marsh, 140 Mo. 458. The title of the act should not govern its construction. Where the intent is plain, and the language unambiguous, nothing is left for construction. U. S. v. Fisher, 2 Cranch, 358.

Laws 1899, c. 351, is special legislation and void, as it is limited to cities existing when Laws 1897, c. 280, was adopted. State v. Ritt, 76 Minn. 531; Burnham v. City, 98 Wis. 128; Kansas City v. Scarritt, 127 Mo. 642. It must appear when the law is passed that it will have a uniform operation throughout the state. State v. Copeland, 66 Minn. 315, 318. If it may in the future become unconstitutional, it is so when passed. Bowe v. City of St. Paul, 70 Minn. 341, 344. The classification must be based on some apparent natural reason. Nichols v. Walter, 37 Minn. 264. To be general it must embrace all and exclude none whose conditions and wants render such legislation necessary or appropriate to them as a class. State v. Wood, 49 N. J. L. 85, 88; State v. Sheriff of Ramsey Co., 48 Minn. 236. Laws 1897, c. 255, the enabling act under the first home-rule amendment, is inapplicable. The amendment adopted in 1898 abrogated the provisions of that adopted in 1896 and of the enabling act of 1897. Nichols v. Walter, supra; State v. Board of Co. Commrs., 66 Minn. 519. The enabling act is insufficient to sustain a charter, be-

cause it does not include a general framework delegating powers within the limits of which the charter should be framed.

*Davis, Kellogg & Severance,* for respondent.

BROWN, J.

Quo warranto proceedings to determine the right of respondent to the office of chief of police of the city of St. Paul.

The important question in the case is the constitutionality of Laws 1899, c. 351, the same being an act to authorize cities and villages to frame their own charters. Pursuant to this act due proceedings were had by the city of St. Paul, and a charter framed and adopted as provided thereby, under the provisions of which respondent was appointed chief of police. Relator held the office at the time of the adoption of the new charter and the appointment of respondent, and disputes and contests the right of the latter to the office on the ground that the act of the legislature aforesaid is unconstitutional and void, in consequence of which the new charter is a nullity. We come directly to the main question, without further statement as to the rights of the respective parties to the office in question.

Laws 1899, c. 351, pursuant to which the new charter of St. Paul was framed, was passed and enacted under section 36 of article 4 of the constitution of the state, as amended in 1898 (Laws 1897, c. 280). The relator assails the constitutionality of the act of the legislature on two grounds: (1) That it is unconstitutional and void because made to apply to cities in existence when the constitutional amendment was adopted, only; (2) that it is void because it fails to provide general limits within which to frame charters authorized thereby. The section of the constitution, so far as applicable to relator's first objection, reads as follows:

"Sec. 36. Any city or village in this state may frame a charter for its own government as a city consistent with and subject to the laws of this state, as follows: *   *   *   "

The act of the legislature, so far as here pertinent, reads:

"Section 1. Any city incorporated prior to the adoption of the constitutional amendment allowing cities already incorporated, and

villages desiring to be incorporated as cities, to frame their own charter as cities, * * * and any village in the state of Minnesota desiring to be incorporated as a city, may frame a charter for its own government as a city as hereinafter provided."

It is the contention of relator that this act is void because limited and restricted to cities incorporated prior to the constitutional amendment, when, as he claims, the constitution applies to all cities, whenever incorporated. If this contention is sound, the charter must fall. It is sound if we read and construe section 36 of the constitution literally. Its language is that all cities may frame charters, while the act of the legislature provides that all cities incorporated prior to a given date may do so. Unless this limitation is warranted and justified by a proper construction of the constitution, the act must be declared void as special legislation. Respondent contends that the title to the act of the legislature proposing and submitting section 36 to the people as a constitutional amendment may be referred to in determining the intent of the legislature and of the people in adopting the amendment. The title to the act proposing the amendment to the constitution reads as follows:

"An act proposing an amendment to section 36 of article 4 of the constitution of the state of Minnesota, allowing cities already incorporated and villages desiring to be incorporated as cities, to frame their own charter as cities, and classifying cities for the purpose of general legislation."

The body of the act, the section of the constitution as proposed to be amended, provides that any city or village may frame a charter for its own government, and the authority there conferred is not confined or limited to those already incorporated. That the amended constitution was intended to apply to cities having an incorporated existence at the time of its adoption seems very clear to us.

In determining the intent of the amendment, reference may be had to the conditions surrounding the government of municipalities, and the history of general legislation with respect thereto. Church of Holy Trinity v. U. S., 143 U. S. 457, 459, 12 Sup. Ct. 511; U. S. v. Union Pac. R. Co., 91 U. S. 72, 79; Croomes v. State, 40 Tex. Cr. App. 672, 51 S. W. 927. By a constitutional amendment in 1891, special legislation as to cities and villages was wholly prohibited.

Thereafter all incorporated cities and villages were limited in the conduct and management of municipal affairs to the power and authority theretofore contained in and conferred by their charters, to which no amendments or additions could be made. The result of this was to hamper and embarrass such cities and villages in the conduct of their affairs. Exigencies and new conditions arose, which demanded and required the exercise of greater power than was conferred upon them; but the legislature was powerless to act, except perhaps by general legislation, which was impracticable, because of the varied interests, duties, and responsibilities of different cities. The constitution prohibited granting any further privileges to such cities, and as a consequence the administration of public affairs thus became very much embarrassed and involved. To obviate all these difficulties, and to place such cities on a broader basis, and in a position prepared to meet and deal with new conditions sure to follow their advancement and growth, it was deemed wise and advisable to authorize them to frame and adopt their own charters. Cities in existence at this time were for the most part incorporated by special charters, and, by reason of the constitutional amendment of 1891, were absolutely helpless when confronted with new conditions requiring the exercise of additional power; and no doubt the legislature had this in mind, and intended the amendment of 1898 to relieve them, and to extend the same privilege to all villages, whether then or thereafter to be incorporated.

Under this construction there is little difficulty to be apprehended from the suggestion that cities may hereafter be created under the general laws of the state, and will be without remedy under this law, because not incorporated before its passage. As a rule, incorporated municipalities begin their existence as villages, and, as they grow in population and importance, changed conditions and new responsibilities require an advancement to the higher and greater powers incident to cities, and the village is changed and incorporated as a city. No city can be created by special charter, and it will be a very easy matter for the inhabitants of all villages or of any locality, desiring to become incorporated as cities, to proceed under the constitution and law here under consideration, and thus come into existence as cities under a home-made charter, and enjoy

all the privileges conferred by the act. We cannot presume, for the purpose of defeating the act, that some locality may at some time in the future come into existence as a city under the general laws.

In view of all these considerations, and construing the amended constitution in this light, and in connection with the title appended thereto by the legislature, we have no hesitation in holding that the intention of the legislature and of the people in adopting and ratifying it was to limit the application of the amended constitution to incorporated cities then in existence. It is true that no title is required to a proposed constitutional amendment. Such an amendment may be proposed to the people by joint resolution of the legislature. Julius v. Callahan, 63 Minn. 154, 65 N. W. 267. But such title may be looked to nevertheless for the purpose of ascertaining the intent of the law. This is a universal rule, and applies where no title is required. Wilson v. Spaulding (C. C.) 19 Fed. 304; U. S. v. Carbery, 2 Cranch (C. C.) 358, Fed. Cas. No. 14,720; Clark v. Mayor, 29 Md. 277, 285; U. S. v. Palmer, 3 Wheat. 610; Page v. Young, 106 Mass. 313. It follows that the act in question is not in violation of the constitution, but in strict accord therewith.

Relator's second contention is that the act is void because no limits are prescribed within which to frame the charters thereby authorized. The section of the constitution in question provides that

"Before any city shall incorporate under this act the legislature shall prescribe by law the general limits within which such charter shall be framed."

The contention is that the provision is mandatory, and requires the legislature to prescribe general and uniform limits or a broad framework on each topic to which the charter may relate, prescribing in detail the powers and authority within which the charter must be framed. We cannot concur in this view. To adopt it would wholly nullify the purposes intended to be subserved and secured by the constitution. A "broad framework for each topic" pertaining to a city charter would in itself be a charter, and render the act of the city in framing one nothing more than adopting therefor the legislative grant of power, and, instead of exercising the

right to "frame their own charter," cities would be confined to what the legislature saw fit to grant them, and nothing more. The general power and authority to frame city charters is granted by the constitutional amendment, and ex necessitate extends to all powers properly belonging to the government of municipalities, and the requirement that the legislature shall prescribe limits within which such charter may be framed must be construed to mean limits beyond which the charter may not go. In other words, it is thus made the duty of the legislature to provide such general limitations and restrictions as that body may deem expedient and proper. No other interpretation can be placed on this provision, consistent with the plain and obvious purpose and intent of the legislature and people in adopting the constitutional amendment of which it is a part. In obedience to the requirements of the constitution, the legislature incorporated in the act in question certain specified limitations and restrictions upon certain subjects, and it is not for the court to say that other and further limits or restrictions should have been imposed. There was a sufficient compliance with the constitution in this respect.

It follows that the act is not open to the objections made against it, and is valid and constitutional. Other questions argued by counsel do not require further mention. There is no doubt as to the right of the respondent to the office in question. He was appointed thereto by the board of police commissioners created by the new charter, and has duly qualified. Section 6 of title 7 of chapter 7 of the new charter provides that

"All officers, employees and members of the police force and department of said city of St. Paul, at the time when this charter becomes effective, shall continue to hold their several offices until removed by the said board; and all orders, rules and regulations applicable to said police force and department and in force at said time shall continue in force until otherwise provided by said board."

Relator contends that by the adoption of the new charter he became an officer thereunder, and could only be removed in the manner and for the reasons specified therein for the removal of officers. This contention is not sound. He was not an officer under the new charter, but was subject to the rules and regulations applicable to

his office under the old charter, and under the provisions of the new charter above quoted, and section 16 of chapter 23, could be superseded by an appointment of another person by the police board, and has no right to insist that he could be removed for cause only.

Writ quashed.