STATE ex rel. LYNDON A. SMITH v. DULUTH STREET RAILWAY COMPANY.[1]

January 29, 1915.

Nos. 19,095—(20).

**Street railway — franchise — condition unfulfilled.**

1. The Duluth Street Railway Co. did not construct, equip and have in operation one mile of its street railway within one year after the granting of its franchise, in accordance with the condition expressed in it.

**Same — forfeiture of franchise.**

2. The franchise granted to the Duluth Street Railway Co. (Sp. Laws [Ex. Sess.] 1881, c. 200, approved November 17, 1881) was upon the express condition that if it failed to construct, equip and have in operation one' mile of street railway within one year it should, without any act on the part of the state or the village of Duluth, forfeit to the village all of the rights, privileges and immunities granted. It was provided that the grant, when accepted, should be a contract between the state and the village and the company. It is *held* that the forfeiture was not executed *ipso facto* upon a failure to perform the condition strictly on time, so that there could be no waiver of the strict performance of the condition, or of a forfeiture, but that the condition was in the nature of a condition subsequent subject to waiver.

**Waiver of performance.**

3. The village waived strict performance of the condition.

**Construction of franchise.**

4. The act of 1881 constitutes a valid franchise, exclusive in character, in

[1] Reported in 150 N. W. 917.

the Duluth Street Railway Co., and such franchise expires on October 17, 1931.

Upon the relation of Lyndon A. Smith, Attorney General, the district court for St. Louis county granted its writ of *quo warranto* directing the Duluth Street Railway Co. to show by what warrant it assumed to exercise any right, privilege, immunity or franchise under or by virtue of the legislative act of 1881 (Ex. Sess.) c. 200. The respondent answered and alleged that, by resolutions and ordinances and actions brought, the village of Duluth, the city of Duluth and the state of Minnesota repeatedly and in various ways asserted the continued existence and validity of respondent's franchise and enforced its provisions against respondent by requiring it to expend large sums of money thereunder in the construction of new lines and extensions. The matter was heard by Cant, J., who dismissed the writ. From the order denying its motion for a new trial, and from the judgment entered pursuant to the order for judgment, plaintiff appealed. Judgment and order affirmed.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, *Francis W. Sullivan, Davis, Kellogg & Severance* and *Harvey S. Clapp,* for appellant.

*Washburn, Bailey & Mitchell, N. M. Thygeson, Henry F. Greene* and *Thomas S. Wood,* for respondent.

DIBELL, C.

*Quo warranto* on the relation of the attorney general questioning the right of the respondent, Duluth Street Railway Co., to occupy the streets of Duluth. There was judgment for the respondent. The state appeals from the order denying its motion for a new trial and from the judgment.

The street railway company claims the right to occupy the streets of Duluth by the grant contained in Sp. Laws 1881, (Ex. Sess.) p. 212, c. 200, approved November 17, 1881.

Section 1 grants to the Duluth Street Railway Co. "during the term of its charter, the exclusive right and privilege of constructing

and operating a single or double track for a passenger railway line," etc., in the streets of the village and its suburbs.

Section 2 is as follows:

"The aforesaid grant is upon the express condition that if the said Duluth Street Railway Company shall fail to construct, equip and have in full operation one mile of said street railway within one year after the passage of this act, then and in that case the said Duluth Street Railway Company shall, without any act on the part of the state or the village of Duluth, forfeit to the village of Duluth all of the rights, privileges and immunities granted by this act, and is upon the further express condition, that said company shall build and operate a line connecting Rice's point with the central parts of said village, as soon as there shall be an improved street available for that purpose."

Section 3 provides that, under certain conditions, the village council may designate extensions or new lines, and if not constructed by the company it may grant an exclusive franchise to another company; and if the company neglects to keep a line in operation the council may grant an exclusive franchise to another company to build and operate on such line.

Section 16 provides that upon the company signing and filing an acceptance of the grant with the secretary of state and the village recorder the same shall operate as a contract between the state and the village and the company.

On November 8, 1881, prior to the grant of the franchise, the people had voted upon and adopted an amendment prohibiting the granting of such a franchise by special act. Const. art. 4, § 33. This amendment did not become a part of the Constitution until the January following. City of Duluth v. Duluth St. Ry. Co. 60 Minn. 178, 62 N. W. 267. At the time fixed for the performance of the condition of the grant the legislature was without authority to grant a franchise.

On December 5, 1881, the Duluth Street Railway Co. filed with the recorder of the village, and on December 8, with the secretary

of state, its written acceptance in accordance with the provisions of section 16.

The village of Duluth was created by Sp. Laws 1881, p. 49, c. 11, approved March 8, 1881. The authority delegated to it to grant rights in its streets for street railway purposes is as follows:

"To authorize, control and grant the power to construct street railways in the streets and avenues of said village by any private company or companies, and to control and direct the operation of the same by contract or ordinance."

At the time of the forfeiture claimed the village, by virtue of this charter provision, could grant a franchise. It could not grant an exclusive franchise such as the 1881 statute granted. Long v. City of Duluth, 49 Minn. 280, 51 N. W. 913, 32 Am. St. 547; Detroit Citizens' Street Ry. Co. v. Detroit Ry. Co. 171 U. S. 48, 18 Sup. Ct. 732, 43 L. ed. 67. And it may be conceded that it could not, under its charter, bind itself to a provision for fares such as was embodied in the 1881 franchise.

By Sp. Laws 1883, p. 219, c. 80, § 3, approved March 5, 1883, the village charter was amended and the provision above quoted was omitted.

The Duluth Street Railway Co. was incorporated under the general laws on October 17, 1881. The period of its corporate existence was fixed at 50 years from that date. By an amendment of its articles adopted on March 18, 1910, the period of its corporate existence was extended to 50 years from July 1, 1908.

The state does not attack the general franchise of the company —that is, its right to be a corporation and to exercise corporate powers. It attacks its right to use the streets of Duluth under the special grant of 1881; and the proceeding resolves itself into an inquiry into the validity of this grant.

In a general way the questions are these:

(1) Did the company perform the condition contained in its

grant to the effect that it should construct, equip and have in operation one mile of its street railway within one year from the date of the grant?

(2) If it did not, was the forfeiture at once executed so that all rights were at an end, with no power in the village to waive strict performance or the right to claim a forfeiture?

(3) If the village had the power to waive, did its acts constitute a waiver?

(4) What right, if any, has the company by virtue of its grant?

The second is the fundamental question. The others are proper to a complete statement of the case.

1. The court finds that the railway company constructed one mile of track prior to November 18, 1882. The evidence justifies the finding. It was a shabby affair, but it was a track, and it was a mile long. It had been built in haste, commenced not very long before it was finished, and was relaid before practical use was made of it.

The court finds that the railway company "wholly failed to equip the said line of railway or to have the same in operation before said last-mentioned date, nor was said line fully equipped or in operation at any time prior to the sixth day of July, 1883."

This conclusively appears. At the date stated it was complete, and ever since it has been in operation. The condition was not performed within the time specified in the grant.

2. The vital question is whether upon the failure to perform the condition prior to November 18, 1882, the forfeiture was at once executed with no power resting in the village to waive performance at the precise moment specified or to condone a forfeiture.

The state reaches the heart of the controversy when it rests its claim upon the proposition that the forfeiture clause in the franchise was self-executing; that there being a failure to build and operate within the time fixed by the grant, the franchise was at an

end; that there could be no waiver of a failure to operate on strict time; and that the street railway company could get rights in the street afterwards only by a new grant.

That a statute may create a self-executing forfeiture so that upon the failure to perform the condition upon which it depends all right ends is without question. Thus in Wilmington City Ry. Co. v. Wilmington & B. S. Ry. Co. 8 Del. Ch. 468, 46 Atl. 12, the court says:

"The reason why a forfeiture created by a statute is self-executing, while one raised by the common law is not, is that the legislature said so, and intends so."

Cases are cited almost without end, some resembling the one before us, others drawn from more or less useful analogies of the law. Many of them are cited and find comment in Booth, Street Railways, §§ 46, 47; Joyce, Franchises, § 486; 4 McQuillin, Municipal Corporations, §§ 1665–1668; and 1 Nellis, Street Railroads, § 17.

A review of them would not be useful. We have examined them. The question is one of legislative intent. All of the cases make it so. If it was the intention of the legislature that on November 17, 1882, the street railway not then being completed and in operation, all rights under the grant should cease, and there should reside in the village no power of waiving strict performance, such intent must be given effect. If that was the intent the village or city could not estop or otherwise bind itself to a franchise such as was granted by the 1881 act, for it had no power to grant such a franchise. It could not by estoppel bind itself to a franchise different from one it might grant under its charter. This is the effect of the holding in State v. Des Moines City Ry. Co. 159 Iowa, 259, 140 N. W. 437.

At the time of the grant of the franchise the legislature knew that when the time fixed for the performance of the condition came it would be without authority to make a further grant because of the constitutional amendment mentioned. Section 16 made the franchise a contract between the state and the village and the company upon

the company's acceptance. The forfeiture was made to the village. The village could give no such franchise. It was the purpose of the state and the village to get a street railway built and operated by the respondent. It was the purpose to put the street railway under the regulation of the village. So much was this so that it was given power to require extensions and if need be grant exclusive franchises to other companies. In our judgment it was not the legislative intent that upon a failure to build on time the forfeiture should be *ipso facto* executed, of necessity, though the village preferred to waive the forfeiture, and did everything it could to avoid taking advantage of it. Whether Duluth should have a street railway, and if so upon what terms, was largely of local concern, though the right to use the streets for street railway purposes of necessity came directly or indirectly from the legislature. The condition was, in our opinion, in the nature of a condition subsequent, the strict performance of which could be waived. This was the view taken by the trial court. No case cited is in its facts precisely like the one before us. The cases furnish arguments some for and some against the conclusion reached. More than 30 years have passed since the franchise was granted. We have not attached great importance to a long-continued practical construction; but the fact that for long the construction which we adopt has been generally accepted and acted upon by the public and the company and by those interested adversely to the company is reassuring of its correctness.

3. If the village could waive strict performance the evidence leaves no question but that it did. On December 22, 1882, the common council, reserving to itself the right to except to the manner in which the tracks were laid and to the kind of rails used, consented by formal resolution that the company postpone the actual operation of its railway until May 15, 1883; and on May 1, 1883, it formally consented by resolution that the operation of the road be delayed until 30 days after the acceptance of a certain street improvement; and the railway was in operation within the time fixed by this last resolution. Upon its completion cars commenced running and they

have run ever since. The village and its successor, the city, accepted the completed road and treated the grant of 1881 as the franchise under which it operated.

4. The grant to the company was "during the term of its charter." The company was incorporated on October 17, 1881. The court found that its franchise expired on October 17, 1931. Since its incorporation its corporate existence has been extended by the amendment of its articles to 50 years from July 1, 1908. The amendment did not result in an extension of the franchise. The street railway company has a valid franchise, granted by the act of 1881, exclusive in character, the provisions of which are subject to construction as occasion arises, and such franchise is at an end on October 17, 1931.

Judgment and order affirmed.