STATE EX REL. J. V. MATHEWS v. R. R. HOUDERSHELDT,
AS AUDITOR OF LYON COUNTY.[1]

January 13, 1922.

No. 22,660.

**Constitution construed not to be retrospective.**

1. A constitution, like a statute, should be given a prospective oper-
ation only, unless on its face the contrary intention is clearly mani-
fested, or such a construction is absolutely necessary to give meaning
to the language used.

**Amendment construed so as to give effect to intent of the people.**

2. If the language is unambiguous, there is no room for construc-
tion of a constitutional amendment, but if it requires construction, the
constitution will be read as a whole so as to harmonize its various parts,
and the intent of the people, as expressed in the language of the amend-
ment, will be given effect.

**Term of probate judges extended to four years.**

3. Construing the amendment to section 7, art. 6, of the state Con-
stitution extending the term of office of probate judges, it is *held*, that
the amendment enlarged the term of judges chosen at the general elec-
tion in 1920, and that they took office in January, 1921, for a term of
four years.

Upon the relation of J. V. Mathews the supreme court granted its
alternative writ of mandamus directed to the county auditor of Lyon
county requiring him to receive the affidavit and fee of relator as a
candidate for the office of judge of probate of that county or show
cause why he had not done so. Writ discharged.

*Egbert S. Oakley*, for relator.

*Butler, Mitchell & Doherty*, for respondent.

LEES, C.

At the general election in November, 1920, an amendment to sec-
tion 7, art. 6, of the state Constitution, proposed by the legislature

[1] Reported in 186 N. W. 234.

at the 1919 session (chapter 531, p. 753, Laws 1919), was duly approved.

In the title of chapter 531, the amendment is referred to as one changing the length of the term of the judge of the probate court. The act provided that the ballots used at the election should have printed thereon: "Amendment to section seven, article six, of the constitution of the state of Minnesota, providing for extension of the term of office of the probate judge to four years." On December 1, 1920, the Governor issued his proclamation declaring that the amendment had been approved by the electors.

At the same election the relator was duly elected to the office of judge of the probate court of Lyon county for the term commencing on the first Monday in January, 1921. He qualified and has since been the acting judge of said court. On July 19, 1921, he duly tendered to the respondent, as county auditor of Lyon county, the filing fee and affidavit required by law in order to have his name placed on the primary election ballot as a candidate for the same office at the primary election to be held in 1922. The auditor refused to receive them, for the sole reason that he was of the opinion that the amendment operated to make the relator's term of office four years from the first Monday in January, 1921, and hence there would be no vacancy in the office to be filled at the election held in 1922. These facts were set forth in relator's petition to this court, upon which he obtained an alternative writ of mandamus directed to the county auditor, requiring him to receive the filing fee and affidavit or show cause why he had not done so. The respondent answered, admitting the allegations of the petition, and asked that the writ be quashed. The question to be decided, as concisely stated in relator's brief, is this: Does relator's term of office as judge of probate expire in January, 1923, or in January, 1925?

Section 7, before it was amended, read:

"There shall be established in each organized county in the state a probate court, which shall be a court of record and be held at such times and places as may be prescribed by law. It shall be held by one judge who shall be elected by the voters of the county for the term of two years."

The only change was to substitute "four" for "two" before the word "years." The answer to the question depends on the effect of the amendment.

Relator contends that its operation must be postponed until 1923 and that probate judges elected in November, 1922, will be the first to hold office for four years. Respondent contends that probate judges elected in November, 1920, hold office for four years from the first Monday in January, 1921. In support of his contention counsel for the relator argues that, when the electors cast their ballots at the November election in 1920, the term of office of probate judges was two years and continued to be two years until December 1, when the Governor's proclamation was issued. City of Duluth v. Duluth St. Ry. Co. 60 Minn. 178, 62 N. W. 267; State v. Duluth St. Ry. Co. 128 Minn. 314, 150 N. W. 917. With this as a point of departure, the argument proceeds thus: If it be held that the amendment extending the term of office of probate judges elected before it took effect, it will operate retrospectively, contrary to the well settled rule that a constitution, like a statute, should be construed to operate prospectively only, unless on its face the contrary intention is clearly manifested, or such construction is absolutely necessary to give meaning to the language used. Shreveport v. Cole, 129 U. S. 36, 9 Sup. Ct. 210, 32 L. ed. 589; Brown v. Hughes, 89 Minn. 150, 94 N. W. 438; State v. Probate Court of County of Freeborn, 142 Minn. 283, 171 N. W. 928. The application of this principle to cases involving the term of office of public officials is illustrated by citation of a number of cases, those chiefly relied on being State v. Dirckx, 211 Mo. 568, 111 S. W. 1; People v. Foley, 148 N. Y. 677, 43 N. E. 171, and People v. Palmer, 21 App. Div. 101, 47 N. Y. Supp. 403. The value of these cases as authority for relator is impaired by reason of the fact that in the first case the amendment contained an express provision indicating that it was not to become operative before a date in the future, and in each of the other two cases it appeared that a statute would be unconstitutional if construed to enlarge the term of persons already elected to fill the office. The other decisions cited merely exemplify the rule that in election cases,

as in others, a retrospective operation will not ordinarily be given to a statute.

Counsel for respondent insist that the real question is: What did the legislature intend by the proposed amendment and what did the electors understand it to mean when they voted on it? Usually when a court sets out to ascertain how a constitutional amendment was understood by the electorate, it has no reliable guide. Probably the question now raised occurred to few. The ordinary voter casts his ballot for the man he wishes to have elected, uninfluenced by any consideration of the length of his term of office. In the present instance, if he thought about it at all, he might properly conclude that, if the amendment was adopted, the candidate elected would take office for a term of four years. There was nothing in the language to suggest that the operation of the amendment was to be postponed for two years. After December 1, 1920, the original provision of the Constitution was no longer in effect. It is difficult to presume that it was the intention that the duration of a term of office which began after December 1 should be fixed by a provision which had been superseded by the amendment. The object of the amendment was to make the term of office of probate judges conform to that of other county officers as fixed by chapter 168, p. 233, Laws of 1915. Such officers will be elected in 1922 and probate judges in 1924, if respondent's construction is adopted, but we do not regard that circumstance of much importance since there must be general elections every two years anyway.

There are certain familiar rules for the construction of constitutional provisions which are more or less pertinent here. They are substantially the same as the rules applicable to the construction of statutes. State v. Twin City Tel. Co. 104 Minn. 270, 285, 116 N. W. 835. Chief among them is the one which requires a construction which will give effect to the intent of the people as expressed in the language of the amendment they adopt. Davis v. Hugo, 81 Minn. 220, 83 N. W. 984. If the language is unambiguous, it must be taken as it reads—there is no room for construction. State v. Sutton, 63 Minn. 147, 65 N. W. 262, 30 L. R. A. 630, 56 Am. St. 459. The Constitution must be read as a whole so as to harmonize its

various parts. State v. Stearns, 72 Minn. 200, 211, 75 N. W. 210, and the maxim, noscitur a sociis, is applicable. Dike v. State, 38 Minn. 366, 38 N. W. 95. The evils the amendment was designed to remedy and its legislative history may be considered. State v. O'Connor, 81 Minn. 79, 83 N. W. 498; State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L. R. A. (N. S.) 327.

Article 6 should be read as a whole to get at the meaning of any one of its sections. Sections 3, 4 and 8 relate respectively to judges of the supreme court, district judges and justices of the peace. After defining the body of electors by whom these judicial officers are chosen, the term of office is fixed at six years in the first two instances and two years in the last. Section 7, relating to probate courts, directs that the judges "shall be elected by the voters of the county for the term of two years," instead of declaring that their term of office shall be two years. If an amendment to section 4, extending the term of office of district judges to eight years, had been submitted and approved and a judge elected at the same general election, a question would arise similar to that presented here. If relator's construction is correct, the judge would take office for six years, although the Constitution, as amended, expressly declared that the term of office of district judges should be eight years. In the case supposed, such a construction would seem forced. It is only a degree less forced when we consider how slight is the variation in the language of section 7. Section 24, art. 4, of the Constitution, indicates that little attention has been paid to forms of expression similar to those found in article 6. It provides that representatives shall hold office for a term of two years and that senators shall be chosen for four years. Here we have in one section the same variation in phraseology as in the several sections relating to judges. To say that because representatives hold office for a fixed term, while senators are chosen for a fixed term, the framers of the section had different things in mind, is to draw too fine a distinction, and the statement holds good with respect to article 6.

In its final analysis, we think the question is this: When the electors voted to amend the Constitution by enlarging the term of office of probate judges, and at the same time elected the judges,

should it be presumed that they were voting for candidates to fill the office for the term fixed by the provision of the Constitution in effect at the time of the election? The reasoning in People v. Foley, supra, would apparently lead to an affirmative answer. But there is a clear distinction between that case and this. There the legislature enlarged the term of office the day after the election at which candidates were voted for. Here the people themselves were legislating at the same time selecting public officers. When they gave their approval to the amendment, their part in changing the organic law of the state was done. So far as they are concerned the amendment was adopted on November 2, and all there was left to do was to have the Governor announce the fact of its adoption. It is hardly accurate to say that the amendment is given a retrospective effect if it is held to apply to probate judges elected in 1920. Their election and the adoption of the amendment were coincident. The Governor's proclamation and certificates of election issued merely made a record of what had been done by the electors whose votes gave vitality to the amendment and conferred office upon the successful candidates.

After due consideration of the opposing contentions, clearly and forcibly presented by counsel, we conclude that the amendment was intended to enlarge and did enlarge the official term of probate judges chosen at the general election in 1920, and that when they took office in January, 1921, it was for a term of four years.

Writ discharged.

DIBELL, J. (dissenting).

Probate judges were elected in November, 1920, for a term of two years commencing on the first Monday in January, 1921. This is necessarily so, for they were elected under a Constitution providing for a two year term commencing on the first Monday in January following their election. If in January, 1921, they faced terms of four years instead of two it is because the constitutional amendment of 1920, not effective until after they were elected and in due course had received their certificates of election, operated to extend the terms to which they were elected. The added two years did not

come to any probate judge because of a vote of his constituents; but it came, if at all, because the voters of the state by changing the Constitution extended the term of prior elected judges from two years to four years. That this might be done is not questioned. The question is whether the voters of the state intended such effect by the amendment. The voters of a county did not express an intention to elect for a four year term. They had no opportunity.

In determining the intent of the voters the settled rule of construction is that a constitution like a statute operates prospectively unless a contrary intent is manifested with clearness. A further rule is that an ambiguity as to length of a term should be resolved in favor of the shorter term; and the office, if elective, be returned to the voters to be filled in the ordinary way at the earliest practicable time. State v. McKay, 249 Mo. 249, 155 S. W. 396, Ann. Cas. 1914D, 97; Smith v. Bryan, 100 Va. 199, 40 S. E. 652; Wright v. Adams, 45 Tex. 134; People v. Palmer, 21 App. Div. 101, 47 N. Y. Supp. 403; Opinion of the Justices, 114 N. C. 923, 929. This rule harmonizes with our Constitution which, in case of a vacancy in an elective office, does not permit an appointee to hold beyond the next general election if the lapse of time after the vacancy permits an election then.

I am unable to see a purpose to make the amendment retrospective, and thus to give to each probate judge elected in 1920 an additional two years. The argument to that effect is forcefully made. It might be carried, with less force, so far as to claim that the incumbents at the time the amendment became operative were given an additional two years. If the intention had been to extend the period of office of those elected in 1920 for two years beyond the time for which they were in fact elected, the representatives of the people in proposing the amendment naturally would have followed the precedent established in 1883, when, in fixing the official year and changing to biennial elections, the constitutional amendment expressly made a gift of an additional period of service to those elected at the election at which the amendment was submitted. Const. art. 7, § 9; Laws 1883, p. 6, c. 2; State v. Frizzell, 31 Minn. 460, 18 N. W. 316. Or by some other method the amendment would

have expressed its purpose, for instance, as was done in one case, where an amendment relative to the time of the election of certain officers, voted on in November, 1891, the same day as the general election, provided that such officers should be elected "commencing in the year eighteen hundred and ninety-one." Worman v. Hagan, 78 Md. 152, 27 Atl. 616, 21 L. R. A. 716.

No cases directly in point are cited. The following are useful: State v. Wright, 251 Mo. 325, 158 S. W. 823, Ann. Cas. 1915A, 588; People v. Palmer, 21 App. Div. 101, 47 N. Y. Supp. 403; People v. Foley, 148 N. Y. 677, 43 N. E. 171; Farrel v. Pingree, 5 Utah, 443, 16 Pac. 843; State v. Johnson, 59 N. J. Law, 59, 34 Atl. 929; Greer v. City of Asheville, 114 N. C. 678, 19 S. E. 635.

For the reasons stated I think the amendment of 1920 was not intended to operate retrospectively, and that the four year term for which provision was made should be held to commence on the first Monday in January, 1923, for which term the judges should be elected at the November, 1922, election. Therefore I dissent.

BROWN, C. J. (dissenting).
I concur in the views expressed by Mr. Justice Dibell.