GEORGE F. DAVIS v. TREVANION W. HUGO and Others.[1]

October 18, 1900.

Nos. 12,436—(220).

**Municipal Corporation—New Charter—Time of Taking Effect.**

Where a charter has been prepared and submitted under the provisions of section 36, article 4, of the state constitution (amendment of 1898), and has been actually ratified by the requisite number of qualified voters, it takes effect and becomes the charter of the city or village as a city in which it has been submitted, at the end of thirty days after the day of election. It is immaterial that such ratification is not judicially determined, on appeal from the decision of the canvassing board, until after the thirty-day period has expired.

Action in the district court for St. Louis county by a resident and taxpayer of the city of Duluth against defendant Hugo, as mayor, and others, as comptroller, clerk, treasurer, and aldermen of said city, to enjoin defendants from paying to any of the officers of the city any salaries for a time prior to thirty days from the entry of judgment determining that a new charter had been adopted on any basis other than that provided in the previous charter of the

[1] Reported in 83 N. W. 984.

city. From an order, Ensign, J., sustaining a demurrer to the complaint, plaintiff appealed. Affirmed.

*John A. Keyes*, for appellant.

*J. B. Richards*, as amicus curiæ, also filed a brief in behalf of appellant.

*Oscar Mitchell*, Attorney for the City of Duluth, and *Greene & Wood*, for respondents.

COLLINS, J.

The facts which occasion the present controversy are stated in Hopkins v. City of Duluth, supra, page 189; and, to determine it, we are required to construe that part of the 1898 amendment of section 36, article 4, of the state constitution,—see Laws 1899, page v,—which reads as follows:

"Such charter shall be submitted to the qualified voters of such city or village at the next election thereafter, and if four-sevenths of the qualified voters voting at such election shall ratify the same it shall, at the end of thirty days thereafter, become the charter of such city or village as a city, and supersede any existing charter and amendments thereof."

The question is, did the charter, which failed of ratification according to the determination of the canvassing board, but in fact was duly ratified, as subsequently decided by the courts, take effect March 8, 1900, which was thirty days after the election held under the provisions of Laws 1899, c. 351, or was it postponed by reason of the contest which was instituted and carried on under the provisions of G. S. 1894, § 195, et seq., so that it did not take effect until September 21, which was thirty days after final judgment that the charter had been ratified by the requisite number of voters?

The position of the plaintiff's attorneys herein is that in case of a contest in the courts there is no ratification, within the meaning of the constitutional provision, until such contest terminates favorably to the charter and a final judgment is pronounced, or, in other words, that a contest, if there be one, is as much a part of the proceedings to ratify as is the casting of the ballots by the voters, and a declaration of the result by the canvassing board. This position is not made to depend upon the actual result of the election at which the charter is submitted, nor upon a decision of the canvass-

ing board as to ratification or rejection. It is of no consequence that the electors may ratify by an overwhelming majority, or even by a unanimous vote, and it is of no moment that the canvassing board has officially declared a ratification. The time, according to counsel's contention, when the newly-adopted charter must go into effect and must supersede an existing one, depends not upon the will of the voters as manifested at the election, nor does it depend upon the determination of the canvassing board as to the result, but rather upon the whim of any voter who may choose to contest. If all remain silent, the newly-ratified instrument goes into effect at the expiration of thirty days after election. If a contest be had, the time is postponed indefinitely. Final judgment may be entered within one month, and it may be at the end of one year. In the present case it was about six months. This very important matter of time is thus made uncertain and incapable of ascertainment in any given case, not because of any ambiguity in the wording of the constitutional provision in question, but because a statute authorizes the determination of the canvassing board to be reviewed by the courts at the will of a voter.

We have intimated that there is no ambiguity in the language under consideration. If the proposed charter is ratified at the election, "it shall, at the end of thirty days thereafter, become the charter * * * and supersede any existing charter." These words seem to be plain and positive, and counsel are compelled to admit that, standing alone, they indicate that a new charter, if actually ratified by the required number of voters, must go into effect thirty days after the election; the arbitrary rule as to time having been adopted, instead of the flexible one contended for. But it is argued that a careful consideration of the language used, having in mind the statute providing for appeals to the courts, the existing facts, and the object to be attained, must result in construing the constitutional provision precisely as if it were enacted that the charter should go into effect thirty days after final judgment in case of a contest over its ratification.

Unfortunately for this argument, there is no rule of construction to sustain it. Of course, it is fundamental that when construing a constitutional provision the courts should ascertain and give effect

to the intent of the people in adopting it; but, where the language is susceptible of but one meaning, it controls. A clear expression of the popular will in plain words cannot be controlled by a statute or by existing facts, for the constitutional enactment may have been aimed directly at such statute or facts. These views in no manner encroach upon the rule that when a particular construction of constitutional provisions must lead to hardship, inconvenience, or absurdity, the courts will not readily presume that such construction was intended. But no court would, in our opinion, put aside plain and positive language found in a constitutional provision simply because inconvenience, hardship, or even absurdity might result.

Counsel for plaintiff insists that City of Duluth v. Duluth St. Ry. Co., 60 Minn. 178, 62 N. W. 267, is authority for the construction claimed here, but there is a marked difference in the language under consideration. In that case (page 180) the phrase was,

"If it shall appear in a manner to be provided by law, that a majority of voters * * * shall have ratified such alterations."

The manner in which it was to be made to appear that the proposed amendment then involved had been ratified was to be provided by law, and, if it was thus "made to appear," the amendment became effectual. But in the case at bar the language is explicit that the charter shall take effect at the end of thirty days after the election at which it shall have been ratified, not at the end of thirty days after such ratification shall have been made to appear. The rule of construction which is applicable here is clearly stated in the case of Newell v. People, 7 N. Y. 9, quoted in State v. Sutton, 63 Minn. 147, 65 N. W. 262, and will bear repetition, in these words:

"If * * * the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent upon the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare is the meaning of the instrument; and neither courts nor legislature have the right to add to or take away from that meaning. This is true of every instrument, but when we are speaking of the most solemn and deliberate of human writings,—those which ordain the fundamental law of states,—the rule rises to a very high degree of significance. It

must be very plain—nay, absolutely certain—that the people did not intend what the language they have employed in its natural signification imports, before a court will feel itself at liberty to depart from the plain reading of a constitutional provision."

Referring briefly to the contention of counsel that great inconvenience and positive, irreparable injury will follow from the construction we have given this amendment, and must necessarily result in every similar case, should there be any, we are obliged to admit that in any case where the decision of the canvassing board, which should, of course, govern the municipal authorities, is overturned by the courts, there will arise serious and perplexing complications. This is inevitable, and it is immaterial whether the board determines that the new charter has or has not been ratified. But that the authorities may be inconvenienced, the people discommoded, and complications arise, afford no substantial reasons for disregarding the positive language found in the 1898 amendment.

The court below was right in its construction, and the order stands affirmed.