FOLEY BROS. AND ANOTHER v. COUNTY OF ST. LOUIS.[1]

March 7, 1924.

No. 23,714.

**Road contract—classification of material to be moved—loose rock—interest —rulings on evidence.**

A road construction contract provided for the division of the material moved into three classes, denominated "earth," "loose rock" and "solid rock"—specifying that all sand, clay, loam, gravel and other materials of every description not included in the classification for loose and solid rock should fall in the class called earth. It defined the class "loose rock" to include all slate, shale or other rock which cannot be plowed with a ten-inch road plow and four-horse team, but which can be quarried or loosened with a pick, and the class "solid rock" to include all rock in masses which cannot be loosened with a pick. It is *held*:

(1) The court was amply justified in finding that, where the ground was so infested with boulders that it was impracticable to plow it, the whole mass so filled with boulders should be classified as "loose rock."

(2) Since the four members of the court qualified to hear the case are equally divided upon the question whether the evidence sustains the finding that 10,898 cubic yards of the material moved came under the classification of "solid rock," it cannot be disturbed.

(3) The court rightly computed interest from the date upon which the county board accepted the work as completed under the contract.

(4) Upon collateral matters the trial court has a wide discretion in excluding or admitting testimony. No reversible errors occurred in the rulings challenged.

Action in the district court for St. Louis county by the copartners of the firm of Foley Bros. & Nelson to recover $83,920.63 on a road contract. The case was tried before Fesler, J., who made findings and ordered judgment in favor of plaintiffs for $22,482.34. From an order denying its motion to amend the findings and conclusions or for a new trial, defendant appealed. Affirmed because the court was equally divided.

[1] Reported in 197 N. W. 763.

*Charles E. Adams*, special attorney for appellant.

*O'Brien, Horn & Stringer*, for respondent.

*Clifford L. Hilton*, Attorney General, and *G. A. Youngquist*, Assistant Attorney General, by permission of the court filed a brief in behalf of the state of Minnesota, as amici curiae.

HOLT, J.

The controversy is concerning the classification of the materials moved by plaintiffs in the construction of the Fond du Lac-Wrenshall road, in St. Louis county. There is no dispute as to the quantity moved, which was 120,752 cubic yards. The contract provides for classification in these words:

"Excavation shall include all materials of whatever nature encountered, which shall be classified as follows:

"*Earth* shall include all sand, clay, gravel and other materials of every description, as found, which are not included in the following classification for loose and solid rock.

"*Loose rock* shall include all slate, shale or other rock which cannot be plowed with a ten-inch road plow and four horse team but which can be quarried or loosened with a pick without blasting even though the contractor may resort to blasting to facilitate the work; also all detached rock or boulders measuring not more than ½ cubic yard each.

"*Solid rock* shall include all rock in masses, which cannot be loosened with a pick, also all detached rock or boulders measuring not less than ½ cubic yard each."

The dispute is this: The court found that out of the materials moved there were 8,481 cubic yards of "loose rock", and 11,090 cubic yards of "solid rock". Defendant contends there were only 6,900 cubic yards of "loose rock" and 192 cubic yards of "solid rock". The price for moving the "earth" was 62 cents, the "loose rock" $1.10, and the "solid rock" $2.25 per cubic yard.

We are all agreed that the learned trial court correctly determined the quantity of material coming under the classification of "loose rock". Defendant went on the theory that, no matter how

close the boulders lay, if, when dug out and removed, the ground could be plowed, that which was so plowed should go as "earth", and the clean boulders only should be classified as "loose rock". The court applied the test specified in the contract thus: If the ground was so permeated with boulders, slate, shale or other rock that it could not be plowed with a ten-inch plow and a four-horse team, the whole mass should be classified as "loose rock" to the depth that such implowability persisted. Defendant's chief engineer admitted that when the boulders were so close that it was impracticable to plow the mass, the whole thereof should take the classification "loose rock". That means, the stuff filling the interstices between the boulders whether of earth, clay or sand is to be included and measured with the boulders. This was right.

The trial court found that 10,898 cubic yards of a very hard substance, composed of silica and clay, which could neither be practically plowed or picked and had to be blasted, should be classified as "solid rock". The Chief Justice and Justice Quinn are of the opinion that the court was in error, and that it should have been placed in the first or residuary class called "earth". Justice Dibell and the writer are of the opinion that the trial court was correct in its classification. Both sides have fully argued their views to their associates without a resultant change of view. The finding of the trial court is therefore sustained on a division of opinion. It is unnecessary to state the individual views of the court. They carry no weight. No precedent is made. There is no opinion in which to concur and no decision from which to dissent.

The remaining assignment of error affecting the amount of recovery relates to the interest allowed. The board of county commissioners accepted the work as completed August 10, 1921, and the court gave interest from that date. Since a claim cannot be paid under the provisions of section 674, G. S. 1913, until 15 days after it is allowed by the board, defendant argues that it does not draw interest until the expiration of that time. When the work called for by the contract was completed and accepted as such by the board, the money earned was due and payable. There was no occasion to present a claim therefor to the board for any action.

Merz v. County of Wright, 114 Minn. 448, 131 N. W. 635. Interest was properly computed by the court.

Some rulings during the trial are challenged. Defendant offered to show the total amount of the cost of explosives used in the job to be $926.74. Upon objection the evidence was excluded. Error is assigned. At most this related to a collateral matter. There was no offer to show that it would have required the purchase of more worth of explosives if there had been 10,898 cubic yards of sandstone, or limestone formation in the job instead of that amount of the hard sand clay the court·classified as "solid rock". It may be admitted that the extent to which explosives were used in the actual work bore somewhat upon the hardness of the material encountered and the difficulty of moving the same; but, after all, it related to collateral matters as to which the trial court has a large discretion whether to investigate or not. The same holds true as to the cost of moving material with plow, pick and scraper at the tests made subsequent to the completion of the contract.

The result is that the order must be affirmed.

Mr. Justice Stone did not sit, having been of counsel in the court below.

WILSON, C. J. (dissenting.)

I do not agree to or with the conclusion of Mr. Justice Holt and of Mr. Justice Dibell in the foregoing opinion which in effect affirms the lower court by a divided vote of this court. This situation, the large amount involved, and the public interest in the controversy, in my judgment, justifies me in stating my reasons for dissenting to the views of my associates and I consider it the imperative duty of both sides of this controversy to disclose, under the unusual circumstances confronting us, such reasons as they may have to sustain their conclusion.

A piece of the material in controversy, that calls for a construction of these specifications, was produced in this court on the argument and put into a glass of water and in a few moments it was mud. This is the stuff that is now judicially given the dignity of "solid rock."

According to my view of these specifications, you must have rock before you can have "solid rock." This seems as plain as English can make it. It is not possible to read this third classification and find anything therein mentioned which shall be classed as "solid rock" other than rock. In fact, the opinion says that in ordinary language it would not be called solid rock. I think ordinary language is all that we are authorized to apply to it.

The classification of materials will follow the principal constituent therein; but this particular material in controversy is of uniform quality and there is no confusion because it is recognized as half one thing and half another. It is practically 100 per cent strong in its own individual constituency.

In my opinion this material is not rock, therefore cannot be "solid rock". Not being "solid rock", we are not concerned with the clause "which cannot be loosened with a pick" as included in the third classification.

Upon the trial of the case the able counsel for plaintiff said he did not claim this material was "solid rock" because of anything you might call it, but because under the specifications it could not be moved by picking or quarrying. This assertion disregards entirely the subject of the specification which expressly limits solid rock to rock.

Not being "solid rock", we direct our attention to the second classification, covering "loose rock", and see by plain words that that is confined to slate, shale or other rock, etc. (not other material). We are not concerned with the question as to whether the material can be plowed, picked or quarried until we first find slate, shale or other rock. Clearly this we do not find. By this process of exclusion, we have eliminated divisions 2 and 3 of these specifications and we find in division one, the classification which, by the use of clear, plain and unambiguous words, includes this material: "*Earth* shall include all sand, clay * * * and other materials of every description * * * which are not included in the following classification for loose and solid rock."

The residuary clause is written in the first division. If this material, that readily yields to water and becomes mud, is not "solid

rock", nor "loose rock", then it must be governed by the residuary clause as earth, unless it is where I prefer to put it, under the class of earth pursuant to the specific designation of sand and clay where all the witnesses put it—some aside from the specifications, and others in the face of the specifications. We do not need a civil engineer, or any other expert, unless it be a grammarian, to tell us what this language means. We should construe it in the ordinary way, the same as it was probably construed by all, prior to letting the work. The certainties of the language of the contract, not the surprises in its performance, nor the misfortune of the contractor, must control. Being "earth", the base price must control. Before plaintiff is entitled to a higher price, he must show that the material is not earth, that it falls into the class of rock, loose or solid, and in this case the burden is upon him. He must maintain that the word "clay" as used in the contract, does not mean clay. He cannot call it rock because, in common parlance, and in fact, it is not. He is therefore forced to the hypertechnical interpretation that the phrase which is certainly intended to differentiate loose rock and "solid rock"—the test of quarrying or loosening with a pick—makes solid rock of what would otherwise be earth.

To construe this language as meaning that all material, instead of the narrower term "all rock" that cannot be loosened with a pick, is "solid rock", leads to absurdities of conclusion and meaning not reasonable or practicable and clearly out of line with what the parties to the contract intended. If the language of this clause, and the other clauses, are taken just as written, and construed in a sensible, practical manner, so as to give effect to the intention of the parties, such absurdities of meaning will be avoided.

We have but to turn to section 9 under the general caption of "Grading", on page 963, to discover further evidence in support of the contention that the terms "rock, sand, gravel and clay," are used in their precise and definite meanings as those words are ordinarily used and understood.

Rock, sand, gravel and clay are deemed materials of value, any one of which the engineer in charge may direct to be disposed of in a particular manner. The use of the several words to describe differ-

ent materials of value, clearly indicates that they are not intended to mean one and the same thing, as the generic term "rock" sometimes does. The fact is that in the contract field, the terms "earth", "loose rock" and "solid rock" are so clearly defined and wellknown that no difficulty is experienced in determining when material falls into one or the other class.

The correct decision of this question of classification turns largely on the intention of the parties to the contract as expressed in the language adopted by them in framing that contract. What the parties agreed to by their solemn compact the court must carry out. The court cannot change the terms of this contract or construe away its true meaning and intent, as understood by the parties thereto, at the time it was adopted as their binding agreement.

If it were possible to vary and limit the meaning of plain words by usage—assuming this could be done at all—which is doubtful, plaintiff must show a usage uniform, general, presumably known to all the parties, and not local, partial or personal. Dickinson v. City of Poughkeepsie, 75 N. Y. 65, 77. I think this has not been done.

The specifications in the contract with their many precise definitions and directions are employed to protect the rights of both parties, and insure to the contractor, within limits, pay for the several units of work performed at the agreed price therefor, and to protect the owner against being required to pay for classes and kinds of work on a different basis than that agreed upon in the specifications.

There is nothing in the clause relating to earth classification which indicates that the word "clay" is used other than in its ordinary significance.

Plaintiffs, or at least their expert, Mr. Darling, undertakes to say that in the classification of earth the words "all sand, clay, loam, gravel" are surplusage and redundant and have no meaning. It seems, however, clear that the specific terms, "sand, clay, loam, gravel" were used to indicate the more common forms of earth expected to be encountered, and to give a forecast of what might be expected of a similar nature under the general term, "and all other materials of every description, as found, which are not included in the following classification for loose and solid rock."

The terms "loose rock" and "solid rock" were used for a purpose in the rock classification clauses of section 12, and that purpose was to narrow the probable field of controversy over the classification of materials moved. The word "rock" was used here, not in its broad generic sense as including all the firm solid substance composing the earth's surface, but in its usual and ordinary significance as including all those materials commonly called "rock" because they are in fact rock and generally known as such.

Clay cannot be so hard and tough, as long as it is clay, to be classified as rock. The word "rock" in the contract should be construed to have been used in its plain, ordinary and popular sense. Fruin v. Crystal Ry. Co. 89 Mo. 397, 14 S. W. 557.

The issue presented merely involves our putting a construction upon a contract. The language is plain and clear. It was not for a witness, even an expert witness, but was for the court to construe this language. Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638. The construction must always be such as the language used will reasonably bear. The court cannot adopt a construction of any legal instrument which shall do violence to the rules of language or to the rules of law. The construction of all written instruments belongs to the courts alone, whose duty it is to construe all such instruments. If the meaning of the instrument by itself is affected with uncertainty, the intention of the parties may be ascertained by extrinsic testimony.

If the language used presents a patent ambiguity as to its meaning, then parol evidence may be received to aid the court. Board of Trustees v. Brown, 66 Minn. 179, 68 N. W. 837. But such ambiguity does not exist here. When parties have deliberately reduced their engagements to writing, in terms precise and unambiguous, their intention must be gathered from the whole instrument, and the language thus chosen to express their meaning, and parol evidence is inadmissible, to add to, contradict or alter such language, or to support a construction at variance with the fair, plain import of the words themselves. City of Winona v. Thompson, 24 Minn. 199; Case v. Young, 3 Minn. 140 (209); Baldwin v. Winslow, 2 Minn. 174 (213).

When words are used such as make up these classifications, they involve no absurdity or contradiction. The meaning apparent upon the face of this contract is. the one which alone we are at liberty to say was intended to be conveyed. There is in fact no room for construction. That which the words declare is the meaning of the contract, and we have no right to add to or take away from that meaning. Davis v. Hugo, 81 Minn. 220, 83 N. W. 984. The sole office of judicial construction is to ascertain and declare the purpose of the parties as made apparent and evidenced by the language to be construed. Lawton v. Joesting, 96 Minn. 163, 104 N. W. 830.

Words are to be given their ordinary, popular meaning, unless it is obvious that the parties using them do so with a different meaning. Paust v. Georgian, 147 Minn. 149, 179 N. W. 735. Words are also to be construed in the sense in which a prudent and reasonable man on the other side would understand them. Symonds v. N. W. Mut. Life Ins. Co. 23 Minn. 491, 502. If this material is not rock in the ordinary popular meaning of that word, the court should say so and classify it as earth. The language being free from doubt, resulting from technical terms, it presents a question of law for the determination of the court. Bell Lumber Co. v. Seaman, 136 Minn. 106, 161 N. W. 383. In fact, where language is unequivocal, rules of construction have no application. Northern Welding Co. v. Jordan, 150 Minn. 12, 184 N. W. 39.

QUINN, J. (dissenting.)
I concur in the dissenting opinion of the Chief Justice.