# STATE EX REL. JOSIAH H. CHASE v. CHARLES M. BABCOCK.[1]

June 29, 1928.

No. 26,801.

**Construction of state constitution.**

1. In construing an article of the state constitution, the aim is to ascertain the intent of the legislators and people in adopting it. If the language used is unambiguous it must control. The entire enactment is to be considered as a whole. If open to construction, the social, economic and political situation of the people at the time of its adoption, and subsequent changes therein, may be looked to for any light thereby thrown on the subject. A practical, common sense construction should be given.

**Construction of article on trunk highways.**

2. Art. 16 of the constitution, adopted in 1920, clearly provides that trunk highways shall not extend within the limits of cities of the first class.

**Benefit of trunk highway system to large cities.**

3. The benefits to the large cities from the trunk highway system consist in the furnishing of a network of improved highways radiating throughout the state from the borders of such cities and connecting with their streets, whereby trade and traffic from all parts of the state and from other states come to them.

**Continuity of travel through cities.**

4. Stopping a trunk highway at the city limits and continuing it from the opposite city limits does not prevent continuity of travel, as all city streets are public highways.

**Trunk highway between Minneapolis and St. Paul unnecessary.**

5. The two cities of Minneapolis and St. Paul adjoining, there is no space or occasion for building any trunk highway to connect one with the other.

[1]Reported in 220 N. W. 408.

**Construction of 1921 act.**
　　6. L. 1921, c. 323, § 13, subds. 3 and 4, is entirely consistent with the provisions of art. 16 of the constitution, as herein *held.*

**Title of 1919 act.**
　　7. The title of L. 1919, c. 530, submitting the constitutional amendment in question, is general and in no way indicates that trunk highways should or should not enter cities.

Constitutional Law, 12 C. J. p. 693 n. 85; p. 700 n. 74; p. 704 n. 99; p. 707 n. 35; p. 710 n. 62.
Highways, 29 C. J. p. 583 n. 58; p. 586 n. 17.

See 6 R. C. L. 47; 2 R. C. L. Supp. 8; 4 R. C. L. Supp. 374; 7 R. C. L. Supp. 170.

Relator appealed from an order of the district court for Ramsey county, Richard D. O'Brien, J. sustaining a demurrer to his petition and alternative writ of mandamus. Affirmed.

*Mart M. Monaghan,* for relator.

*G. A. Youngquist,* Attorney General, for respondent.

*Neil M. Cronin,* City Attorney of Minneapolis, and *R. S. Wiggin,* Assistant City Attorney, amici curiae, filed a brief in support of the contention of the relator.

OLSEN, C.

Proceeding for a writ of mandamus upon petition of Josiah H. Chase, relator, against Charles M. Babcock, as commissioner of highways of the state of Minnesota, respondent. An alternative writ issued. The respondent demurred to the petition and alternative writ on the ground that the facts stated therein do not constitute a cause of action. The demurrer was sustained, and relator appeals.

Relator is a citizen, resident and taxpayer of the city of Minneapolis and owns real property abutting on University avenue in said city. He brings this proceeding to have a writ of mandamus issued commanding the respondent, as commissioner of highways, to make a formal order designating a portion of University avenue

in said city as a temporary state trunk highway, in connection with trunk highway No. 3, and to compel the state highway department to assume the maintenance thereof. Relator's property abuts on the part of the avenue so asked to be designated. There are many other persons and parties in the same situation as relator, and all taxpayers of the city have an interest in the matter. The proceeding is brought for the benefit of all parties affected by and interested therein. The city of Minneapolis has been permitted to present a brief in support of relator's argument.

Art. 16 of the state constitution, adopted in 1920, provides for a trunk highway system for the state. Section 1 thereof provides:

"There is hereby created and established a trunk highway system, which shall be located, constructed, reconstructed, improved and forever maintained as public highways, by the state of Minnesota. The said highways shall extend as nearly as may be along the following described routes, the more specific and definite location of which shall be fixed and determined by such boards, officers or tribunals, and in such manner, as shall be prescribed by law, but in fixing such specific and definite routes there shall not be any deviation from the starting points or terminals set forth in this bill, nor shall there be any deviation in fixing such routes from the various villages and cities named herein, through which such routes are to pass."

The route of trunk highway No. 3 is then described as follows:

"Route No. 3. Beginning at a point on the boundary line between the states of Minnesota and Wisconsin, westerly of La Crosse, Wisconsin, and thence extending in a northwesterly direction to a point on the easterly limits of the city of St. Paul and then beginning at a point on the westerly limits of the city of Minneapolis and thence extending in a northwesterly direction to a point on the east bank of the Red River of the North at Breckenridge, affording La Crescent, Winona, Kellogg, Wabasha, Lake City, Red Wing, Hastings, St. Paul, Minneapolis, Osseo, Champlin, Anoka, Elk River, Big Lake, St. Cloud, Albany, Sauk Center, Alexandria, Elbow

Lake, Fergus Falls, Breckenridge and intervening and adjacent communities a reasonable means of communication, each with the other and other places within the state."

The legislation to carry out the provisions of art. 16 of the constitution is found in L. 1921, p. 406, c. 323, and acts amendatory thereto. This chapter provides for a commissioner of highways, and designates him as the officer to determine the definite location of the highways and to carry out the provisions of art. 16. The 1921 law provides that until the routes of the trunk highways are definitely located and permanently established the commissioner shall select and maintain practicable roads along the general location of the routes as temporary trunk highways; that he shall designate such temporary highways by orders made for that purpose, and shall certify a copy of each order so made to the proper county auditor; that thereupon the county or municipal subdivision affected shall be relieved of the maintenance of the road so designated so long as it shall be used as a temporary trunk highway.

Trunk highway No. 3 has been either temporarily or definitely and permanently located and designated by the commissioner of highways from its beginning at the state line westerly of La Crosse to the easterly limits of the city of St. Paul, and from the westerly limits of the city of Minneapolis to a point on the Red River at Breckenridge. Perhaps it is more accurate to say that parts of the route have been permanently located and parts of it designated as a temporary trunk highway. The highway, within the limits stated, has been improved and parts of it paved, and it is being maintained by the state through the commissioner. The commissioner has refused to make or certify any order designating any road or street through or in the city of Minneapolis or the city of St. Paul as either a temporary or permanent route of highway No. 3. He bases his refusal on the claim that art. 16 of the constitution does not locate or permit the location of any trunk highway within the corporate limits of the cities of Minneapolis, St. Paul or Duluth, these being the only cities of the first class in this state. Relator contends that the article of the constitution in

question must and should be construed to authorize and require highway No. 3 to pass through the cities of Minneapolis and St. Paul, and that the commissioner should be commanded to make an order designating University avenue as a temporary trunk highway in and through the two cities. It is admitted that the commissioner has placed the usual marking signs of highway No. 3 along the sides of University avenue and shown said avenue as highway No. 3 on the highway maps published by him pursuant to L. 1921, p. 406, c. 323, § 13, subd. 8.

1. The rules governing the courts in construing articles of the state constitution are well settled. The primary purpose of the courts is to ascertain and give effect to the intention of the legislature and people in adopting the article in question. If the language used is unambiguous, it must be taken as it reads, and in that case there is no room for construction. The entire article is to be construed as a whole and receive a practical, common sense construction. It should be construed in the light of the social, economic and political situation of the people at the time of its adoption, as well as subsequent changes in such conditions. Davis v. Hugo, 81 Minn. 220, 83 N. W. 984; Lindberg v. Johnson, 93 Minn. 267, 101 N. W. 74; Cooke v. Iverson, 108 Minn. 388, 122 N. W. 251, 52 L.R.A.(N.S.) 415; State ex rel. Mathews v. Houdersheldt, 151 Minn. 167, 186 N. W. 234; Borgnis v. Falk Co. 147 Wis. 327, 133 N. W. 209, 37 L.R.A.(N.S.) 489.

2. It is a matter of general knowledge that the establishment of a trunk highway system was much advocated and discussed in the public press and by public speakers for some years prior to 1920. It was necessary to sell the project to the public before it could be adopted. One of the arguments in its favor in the rural districts was that the state would not be burdened with the construction or maintenance of streets in the large cities. The people generally were well informed as to the project. The legislators from the large cities as well as from the rural districts well understood the proposition. The proposed amendment, adopted by the 1919 legislature, was well considered. It was carefully drawn so as to

provide that the trunk highways established and described therein should extend to, but not enter within, the borders of cities of the first class. It was adopted in that form.

Cities of this state are classified for legislative purposes according to population. Cities of the first class are those having over 50,000 inhabitants. There are only three such cities, each having a population of over 100,000. There is a wide gap in size between these three cities and the other cities in the state, none of which appear to have more than about 25,000 inhabitants and only a very few having as much as 20,000 population. Reasonable grounds for not taking over the construction and maintenance of streets in the large cities for trunk highways readily appear. The mass of traffic on these streets is the local city traffic. It is important to these cities to retain full control over the streets within their borders. The state might very reasonably carry a trunk highway for a few blocks through a small city or village, where there is comparatively little local traffic, and decline to maintain as a trunk highway a street for some 20 miles through the twin cities of St. Paul and Minneapolis, where the great bulk of the traffic on that street is the local traffic of the two cities. The intention of the legislature and the people not to carry trunk highways within the limits of cities of the first class clearly appears and is clearly expressed by the words used in the article in describing the location and routes of the highways.

Attention is called to the language of § 1 of the article, that there shall be no deviation, in fixing the routes, from the various villages and cities named therein, through which such routes are to pass. Cities of the first class are not "cities * * * through which such routes are to pass," being clearly excluded by the wording of the various subsections describing the routes touching such cities. The article provides that the trunk highways may pass through many other cities and villages named therein. There are at least nine trunk highways touching the twin cities and four touching Duluth. In every instance where such a trunk highway comes to the city limits of one of these first class cities, it either

ends or begins at the city limits; or, if it is to continue beyond the city, it stops at the city limits and begins at the opposite city limits. We cannot disregard these numerous, clear and consistent declarations of a purpose not to extend trunk highways within the limits of cities of the first class. As to the smaller cities and villages of the state touched by trunk highways, there is no such restriction or requirement.

3. It is urged that if art. 16 be construed as not requiring trunk highways to be maintained within the limits of first class cities it will impose unequal tax burden upon such cities and result in the denial of the equal protection of the law and violate the federal constitution, and therefore such construction should not be adopted. Where an act is reasonably open to different constructions the courts will give to it that construction which makes it valid rather than invalid under the federal constitution. But if the intent and meaning of the act is clear, the court may not by construction make it mean something else, even for the purpose of saving it from constitutional objections.

But the argument on this phase of the case appears to be based on a misconception of the benefits arising from the trunk highway system. The benefits to the large cities from these highways come from the traffic brought into the cities over the highways. The twin cities are specially favored in that line. The nine trunk highways coming to the borders of and connecting with the streets of these cities form a network of highways radiating from the twin cities throughout the state, and bring to them the trade and traffic not only from all parts of this state but from other states as well. We have no basis for calculating these benefits. We think it may safely be assumed that they are many times greater than all automobile and gas taxes paid in the twin cities. The benefits so received result from the building of trunk highways connecting with the streets in these cities, not from the maintenance of trunk highways through them. The trunk highway system is an undertaking for the general benefit and welfare of the entire state. These highways cannot be brought to the door of every residence or up to

the property line of every owner.   There are, for instance, hundreds of townships and villages throughout the state not touched by any trunk highway.   No such highway comes to their borders or connects with any street or highway within the township or village. The inhabitants of these townships and villages pay the same automobile license fees and the same gasolene tax as do the residents of Minneapolis.   They have no such direct benefits from the trunk highways as are enjoyed by the large cities.   The case of Maltby v. Tautges, 50 Minn. 248, 52 N. W. 858, may be cited on the general proposition that, where a highway system is established as one for the whole state, it is not the location of the particular highway but the general benefit to the city or district from the highway system which determines its liability to contribute thereto by taxation.

The contention that the Minneapolis contribution to the highway fund consists not only of the automobile license fees and gasolene tax paid but also of the amount which it might have collected as a property tax on the automobiles is not very convincing when we take into consideration that the license fee is expressly made a tax in place of the property tax, and that neither Minneapolis nor any other district could collect both a property tax and the state license fee.   Nor is it easy to comprehend how Minneapolis can lose a tax which it does not pay and cannot be called upon to pay.

4.   Consideration has been given to the argument that the wording of the article shows an intent to have continuous routes, and that interrupting the routes like route No. 3, through the twin cities, was not intended and the act should not be so construed. The interruption is clearly made by the article itself and we may not disregard it.   Stopping a trunk highway at a public street at the city limits on one side of a city and beginning it again at a public street at the city limits on the other side does not of course prevent continuity of travel.   The streets of the city are public highways for all travelers, and the only effect is that the traveler on the trunk highway, while passing through the city, travels on a city street instead of on a trunk highway.

5.   The suggestion that route No. 3 is required to afford St. Paul, Minneapolis, and other places named in describing the route rea-

sonable means of communication each with the other, and that stopping the route on the east limits of St. Paul and beginning it again on the west limits of Minneapolis does not afford communication over this route between these two cities, has not much force. The two cities adjoin and were treated as one continuous municipality. Nothing but a line separates them, and there is no space in which to build a road from one to the other.

6. L. 1921, p. 406, c. 323, § 13, subds. 3 and 4, are referred to as showing that the highways are intended to pass through cities and villages. These provisions are entirely consistent with the provisions of art. 16, that the routes may pass through all cities and villages named therein, except cities of the first class.

7. The title of L. 1919, p. 737, c. 530, submitting art. 16 to the people for adoption, has been referred to as being general in its terms and showing no intention to differentiate as to cities. The title is general in terms and properly so. It cannot be said to indicate that trunk highways should or should not enter cities of the first class or of any class.

8. Relator does not attack the validity of art. 16 under the federal constitution; hence that question is not here for consideration.

Order affirmed.