(No. 21252.—)

CHARLES W. BOYDEN, Appellee, *vs.* THE DEPARTMENT OF
PUBLIC WORKS AND BUILDINGS *et al.* Appellants.

*Opinion filed June 24, 1932—Rehearing denied October 7, 1932.*

OSCAR E. CARLSTROM, Attorney General, (B. L. CATRON,
of counsel,) for appellants.

HIBBS & POOL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Sangamon county by its decree declared null and void the location by the Department of Public Works and Buildings and the superintendent of highways of Route No. 88 of the State-wide system of durable hard-surfaced roads from a point where Route No. 88 intersects Route No. 92 south to the point where it intersects Route No. 7, and enjoined the department and its director and the superintendent of highways from constructing any road upon such location between a point one and one-half miles south of the intersection of Routes Nos. 88 and 92 south to the intersection of Routes Nos. 88 and 7, and the defendants appealed.

The complainant, Charles W. Boyden, a resident, citizen and tax-payer of the village of Sheffield, in Bureau county, filed his bill to the March term of the circuit court of Sangamon county. The defendants answered, replication was filed, the cause was heard in open court, and the decree was rendered at the November term, 1931.

There is no controversy about the facts. Route No. 88 was provided for in the act of 1923—the Hundred Million Dollar Road Bond Issue act—and is therein described as follows: "Beginning at Sterling and extending in a southerly direction to Peoria affording Sterling, with suitable connection to Tampico, Deer Grove, New Bedford, Sheffield (running along Route No. 7 from Sheffield to a point north of Buda) Buda, Bradford, Camp Grove, Edelstein, Peoria Heights, Peoria and intervening communities reasonable connections with each other." It appears from the pleadings and the evidence that Route No. 88 is completed from Peoria, its southern terminus, to an intersection with Route No. 7 north of Buda, and by means of Route No. 7 Sheffield and the various communities on Route No. 88 south of Route No. 7 have reasonable connections with each other. Route No. 88 is also completed from Sterling south to an intersection with Route No. 92. The intersection of Route

No. 88 with Route No. 92 is thirteen and eight-tenths miles due north of its intersection with Route No. 7, and the Department of Public Works and Buildings and the superintendent of highways have surveyed and located Route No. 88 on a line running due north from its intersection with Route No. 7 to its intersection with Route No. 92 and have surveyed and located a spur one and nine-tenths miles long from Route No. 88 to New Bedford. The construction of the fifteen and seven-tenths miles thus located, together with the use of Route No. 7 from its intersection with Route No. 88 to Sheffield, is intended to be the completion of Route No. 88 in accordance with the terms of the statute.

It is the appellee's contention that the Department of Public Works and Buildings has exceeded its power in locating the highway between the two intersections because that part of the location is not a part of Route No. 88 as described in the statute but is a substantial departure from the route which was beyond the power of the department to make. In support of this contention he shows that Sheffield is an incorporated village with a population of over 900 inhabitants, located on Route No. 7 two and a half miles west and one-half mile south of its intersection with Route No. 88; that New Bedford is an incorporated village of about 150 inhabitants, located about ten miles north and about one-half mile east of Sheffield and is three and one-half miles south and one and nine-tenths miles west of the intersection of Routes Nos. 88 and 92; that at the time of the passage of the Road Bond Issue act which established Route No. 88, and for twenty-five years prior thereto, there had been, and there now is, a public highway extending from Sheffield in a northerly direction to New Bedford, and through New Bedford to a point two miles north, thence easterly one and one-half miles and thence northerly one and one-half miles to a point where Routes Nos. 88 and 92 intersect; that this public highway at the time of the passage

of the Road Bond Issue act connected, and now connects, with Route No. 7 at a point in the village of Sheffield near its northern boundary, and for more than twenty-five years prior to the adoption of that act the residents in the intervening community between Sheffield and New Bedford have used, and now use, this highway for travel and communication between Sheffield and New Bedford, and this highway during all that time has been the usual, customary and ordinary highway used by the citizens and residents of Sheffield and points south, west and east to travel by horse-drawn and motor vehicles to New Bedford and points north, including the city of Sterling; that the city of Sterling is located forty-six miles due north of the junction of Routes Nos. 88 and 92; that the city of Kewanee is located on Route No. 34 fifteen miles southwest of Sheffield; that the public highway which has been mentioned at the time of the passage of the Road Bond Issue act, and for many years prior thereto, was marked, designated and known as the "Kee-Way trail" and was a part of the Kee-Way trail, which extended, in part, from the city of Sterling to New Bedford, Sheffield and Kewanee; that Route No. 88 was located from Sterling to Route No. 92 substantially on the Kee-Way trail; that the Kee-Way trail had been graded, improved and marked and was the usual route of travel between Sheffield, New Bedford and Sterling, and for a long time prior thereto was extensively used and traveled and is now so used and traveled; that the public highway described in the statute from the point where Route No. 88 now intersects Route No. 92, affording New Bedford and Sheffield reasonable connections with each other and "(running along Route No. 7 from Sheffield to a point north of Buda)" as a part of the route to be improved with a durable, hard-surfaced road and known as Route No. 88, is a public highway which runs from New Bedford to Sheffield and enters the village of Sheffield from the north and then runs "along Route No. 7 from Sheffield to a point north of Buda," and

that "Line A" on exhibit 1 attached to the bill, being the Kee-Way trail, is the public highway which the Department of Public Works and Buildings is authorized and empowered to improve as a part of Route No. 88, and by the statute it is intended and provided that that line shall be improved by the Department of Public Works and Buildings as Route No. 88, the department having the right to make such minor changes in the location of "Line A" as may become necessary in order to carry the provisions of the act into effect.

Before the passage of the statute it appears that while there was no direct road and no marked trail between Peoria and Sterling there was traffic coming from points north of the intersection of Routes Nos. 88 and 92 and going in a southerly direction toward Buda and Peoria, probably the greater part of which would go to Sheffield, which was two or three miles out of the way, because the Kee-Way trail was marked at that time and easier for people to find who did not know the way, but those who knew the roads and were going in a southerly direction would go south. Most of the traffic from Peoria going up to Buda and on north takes the Kee-Way trail because it is partly marked.

We have held in many cases that it was not practicable for the legislature to describe in minute detail the particular course of every portion of each one of the 185 routes of the State-wide system of hard-surfaced roads for which it provided in the two road bond issue acts which it passed in 1917 and 1923. The routes are usually fixed in the statute by naming the termini, which are often many miles apart, with no direct public highway leading from one to the other and with many public highways intervening capable of being used in different combinations for a continuous highway from one end of the route to the other, and the power is delegated to the Department of Public Works and Buildings to determine the exact public highways between the termini upon which the road shall be constructed. The

determination, however, is not left to an arbitrary discretion. While the termini are the only points fixed by the statute the roads are to be constructed between the termini substantially on the routes designated, so as to connect the different communities and principal cities of the State and so as to afford the different places named and the intervening communities reasonable connection with the termini and with each other. The Department of Public Works and Buildings is vested with authority to select the particular highways, within reasonable limits, on the general route designated by the statute and to make such minor changes in the route as may be necessary for the best interests of the people of the State. (*Mowry* v. *Department of Public Works,* 345 Ill. 121; *Hayes* v. *Department of Public Works,* 336 id. 233; *Stewart* v. *Department of Public Works,* id. 513; *Wiley* v. *Department of Public Works,* 330 id. 312; *Mitchell* v. *Lowden,* 288 id. 327.) When public officers are vested with discretionary power a court of equity will not interfere to control such discretion unless fraud, corruption, oppression or gross injustice is shown. (*Stratton* v. *Henkel Construction Co.* 320 Ill. 526; *Hallett* v. *City of Elgin,* 254 id. 343; *Hill* v. *Kimball,* 269 id. 398; *Stewart* v. *Department of Public Works, supra.*) Where two highways are available, each of which is within the purview of the act and affords the communities reasonable connection with each other and with other communities, the department is authorized to select the one which is for the best interest of the State. To justify a court in holding unjust, unreasonable or oppressive the act of the Department of Public Works and Buildings in designating the route for the construction of a hard-surfaced road under the provisions of the first or second Road Bond Issue act, it must clearly appear from the evidence that there has been an abuse of discretion and an oppressive exercise of power in the location of the road. It is not enough that there should be a difference of opinion between the court and the officers of

the department. The questions of the location of the road and the manner of its construction are committed to the judgment of the department, and that judgment must be conclusive unless the evidence clearly satisfies the court that the department's action has been oppressive and without reasonable grounds. If there is room for reasonable difference of opinion the department's action is conclusive.

The appellee introduced in evidence the proceedings in the Senate and House on the passage of the Road Bond Issue act which was Senate Bill 376 in the Fifty-third General Assembly, from which it appears that the bill as first introduced described Route No. 88 as follows: "Beginning at Sterling and extending in a southerly direction to Peoria, affording Sterling, Sheffield, Buda, Camp Grove, Edelstein, Peoria and intervening communities reasonable connections with each other." It was later amended by the addition of Deer Grove, New Bedford, Bradford and Peoria Heights and the insertion of the provision, "(running along Route No. 7 from Sheffield to a point north of Buda.)" In the House it was further amended by the insertion of the words, "with suitable connection to Tampico," and on the Senate's concurring in the amendment it was finally adopted in the form in which it has been quoted.

It is argued from this history of the bill that the description of the route must be construed as requiring the highway to run directly from New Bedford to Sheffield, entering Sheffield from the north and running along Route No. 7 from Sheffield to a point north of Buda. We do not agree with this construction. The only points named in the description of the route from or to which it must extend are Sterling, Peoria, Sheffield and a point on Route No. 7 north of Buda, and the route is required to be laid out between the termini so as to afford the other places named, together with the termini, reasonable connection with each other. The only part of the route whose course was described in such detail as to prescribe the particular

and precise line to be followed is that part between Sheffield and a point north of Buda, and the part of the road between those two points is required to be along Route No. 7. The statute does not command the construction of a direct road between any two points other than the termini. It must begin at one and end at the other of those terminal points. Route No. 7 had been authorized by the act of 1917, crossing the State from Joliet to East Moline, and it was constructed through Sheffield. Route No. 88 would intersect Route No. 7 at some point north of Buda. The General Assembly, therefore, provided that Sheffield's connection with Route No. 88 should not be at Buda or some other place north or south of Buda by a road to be newly constructed, but should be by the use of the two and a half or three miles of Route No. 7 already constructed between the line of Route No. 88 and Sheffield. The object of the statute was to construct a hard-surfaced road from Sterling to Peoria to accommodate not only the traffic between those two cities but to afford those cities and the towns and communities on or adjacent to the route reasonable connections with each other. The road was not to be constructed only for the use of the communities named, and, in fact, the question of first importance was not their convenience but was the interest of the people of the whole State which it was the duty of the Department of Public Works and Buildings to have in view. The traffic between Sheffield and New Bedford was a very small fraction of the traffic which would use that portion of Route No. 88 between its intersections with Route No. 92 and Route No. 7. Route No. 88 was intended to connect at Peoria with all the routes centering there, and the road also intersected Route No. 7, a highway reaching across the State from Joliet to East Moline, and Route No. 92—another highway having important connections. It may be that it was more convenient for persons desiring to travel between Sheffield and New Bedford to have a direct road; but so it would accommodate more

people traveling between Sterling and the points north and east and west of Sterling and Peoria and the points south and east and west of Peoria to have a direct road from the intersection with Route No. 92 to the intersection with Route No. 7 rather than to go around several miles further to New Bedford and Sheffield. The location which the department has adopted seems more convenient to everybody except those desiring to travel between Sheffield and New Bedford. If these two routes are available and each is within the purview of the statute and affords the communities reasonable connection with each other and with other communities the department is authorized to select the one which is to the best interest of the State, and in laying out a hard road under the State bond issue acts a local custom of travel may be disregarded where another road serves the people of the State better and at the same time meets the requirements of the inhabitants of the particular places which it is to serve. *Mowry* v. *Department of Public Works, supra.*

It is argued that from the language, "(running along Route No. 7 from Sheffield to a point north of Buda,)" it must be inferred that the statute requires a direct road from New Bedford to Sheffield, coming into Sheffield from the north. No such conclusion follows from this language. The only thing which the statute requires to be given to Sheffield is reasonable connections with the other places named. The words "(running along Route No. 7 from Sheffield to a point north of Buda)" have no connection with a road from New Bedford to Sheffield. New Bedford is one of the places to be furnished reasonable connections with the others, and Sheffield is another. The words "(running along Route No. 7 from Sheffield to a point north of Buda)" simply indicate that it was not intended that the construction of Route No. 88 would require or justify an additional hard road from Sheffield to any other point on Route No. 88.

372

The evidence does not justify judicial interference with the executive discretion of the Department of Public Works and Buildings.

The decree is reversed and the cause remanded to the circuit court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*