## LEONARD G. KERNAN AND OTHERS v. MIKE HOLM AND OTHERS.[1]

October 15, 1948.

No. 34,877.

*Sidney G. Blacker, Henry S. Blacker,* and *S. Harry Gainsley,* for relators.

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for respondent Mike Holm.

*Michael J. Dillon,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for respondent Robert F. Fitzsimmons.

*George T. Havel,* County Attorney, for respondent C. L. Huebl.

Loring, Chief Justice.

This is a petition for orders invoking original jurisdiction of this court under M. S. A. 205.78 directing Mike Holm, as secretary of state, to accept fees and file affidavits for Leonard G. Kernan and

[1]Reported in 34 N. W. (2d) 327.

Charles E. Bannister, as candidates for the office of state senator in the 45th and 57th legislative districts respectively; directing Robert F. Fitzsimmons, county auditor of Hennepin county, to accept the filing fees and affidavits of candidacy of S. Harry Gainsley and Henry S. Blacker for the office of state senator in the 33d and 35th legislative districts respectively; and directing C. L. Huebl, county auditor of Le Sueur county, to accept the filing fee and affidavit of candidacy of Ben L. Spors for the office of state senator in the 17th legislative district.

The ground asserted by each official in refusing the fees and affidavits was that there would not be a state senatorial election in the general election of November 2, 1948.

Minn. Const. art. 4, § 24, as amended in 1877 (L. 1877, c. 1), reads as follows:

"The senators shall also be chosen by single districts of convenient contiguous territory, at the same time that members of the house of representatives are required to be chosen, and in the same manner; and no representative district shall be divided in the formation of a senate district. The senate districts shall be numbered in a regular series. The terms of office of senators and representatives shall be the same as now prescribed by law until the general election of the year one thousand eight hundred and seventy-eight (1878), at which time there shall be an entire new election of all senators and representatives. Representatives chosen at such election, or at any election thereafter, shall hold their office for the term of two years, except it be to fill a vacancy; and the senators chosen at such election by districts designated as odd numbers shall go out of office at the expiration of the second year, and senators chosen by districts designated by even numbers shall go out of office at the expiration of the fourth year; and thereafter senators shall be chosen for four years, except there shall be an entire new election of all the senators at the election of representatives next succeeding each new apportionment provided for in this article."

The question presented by petitioners is whether § 24, properly construed, requires the election of senators from odd-numbered districts at the coming election on November 2, 1948.

Whatever may or may not have been the purpose of the legislature which proposed the amendment of Minn. Const. art. 4, § 24, in 1877, we must, as the people who voted upon it had to do, take the language of the amendment as voicing its purpose. It provided that the terms of senators should be the same as then provided by law (two years) until the election of 1878, when there should be an entire new election of senators, the terms of those from odd-numbered districts to expire at the end of two years and of those from even-numbered districts to expire in four years, and thereafter terms of senators should be for four years. It provided further that after each reapportionment there should be an "entire new election." Had it been the intent to provide for staggered terms for senators after the "entire new election" to take place after each reapportionment, as was provided for after the election of 1878, the addition to the amendment of a simple clause, to the effect that the terms of senators chosen in such election from odd-numbered districts should expire at the end of two years and of those from even-numbered districts at the end of four years, would have accomplished that purpose. The inclusion of a provision substantially to that effect for the election of 1878 and the omission of any such provision after the provision for the "entire new election" taking place after each reapportionment are a manifestation of clear intent that there was to be no further discrimination against senators from odd-numbered senatorial districts in the elections immediately following reapportionment. The clause providing for four-year terms was left without modification. Consequently, staggered senatorial elections were eliminated after reapportionment. Where, as here, the language of the section of the constitution is clear and can only be construed as petitioners contend if there is read into it a clause such as was omitted, are we compelled to read into it such provisions for the sole reason that, at a previous period long past, such a provision was

in practice read into the original section before it was amended? We answer that question in the negative.

Because for 20 years the original § 24[2] was erroneously interpreted in practice as if it contained a provision to the effect that at the "entire new election," following a legislative apportionment, the senators from odd-numbered districts should be elected for a short term and those from even-numbered districts for a full term, the petitioners earnestly contend that, notwithstanding that that clearly unauthorized practice, on the advice of the attorney general, has been discontinued for 65 years in the interpretation of like language in § 24, as amended in 1877, this court should now read into the constitution a like provision which is not there and never was there. The plain language of the constitution cannot be amended in such manner.

Where the language of a constitutional provision is clear, there is no room for the application of rules of construction. See, Fairbank v. United States, 181 U. S. 283, 308-311, 21 S. Ct. 648, 658-659, 45 L. ed. 862, 872-874; State ex rel. Chase v. Babcock, 175 Minn. 103, 107, 220 N. W. 408, 410; State ex rel. University of Minnesota v. Chase, 175 Minn. 259, 272, 220 N. W. 951, 956. Here, the chronology is also significant. The amendment was adopted by the people in 1877. The staggered election provided for in it occurred in 1878. The shortest terms of senators elected thereat expired in 1880. A reapportionment was enacted in 1881. L. 1881, c. 128. The next general election occurred in 1882. The senate elected thereat, by

[2]"The senators shall also be chosen by single districts of convenient contiguous territory, at the same time that the members of the house of representatives are required to be chosen, and in the same manner, and no representative district shall be divided in the formation of a senate district. The senate districts shall be numbered in regular series, and the senators chosen by the districts designated by odd numbers shall go out of office at the expiration of the first year, and the senators chosen by the district designated by even numbers, shall go out of office at the expiration of the second year; and thereafter the senators shall be chosen for the term of two years, except there shall be an entire new election of all the senators at the election next succeeding each new apportionment provided for in this article." Minn. Stat. at Large (Bissell) (1873) p. 50.

resolution, requested an opinion from the attorney general as to the length of the terms of its members. Though these men were contemporary to the adoption of the amendment and were familiar with the previous practice, they immediately saw the significance of the omission of a provision for staggered terms after reapportionment. The then attorney general rendered an opinion to the effect that all senators elected in 1882 were elected for four years, regardless of the number by which their districts were designated. Opinions of Attorneys General, 1858-1884, p. 527.[3] That opinion was, in our judgment,

[3]"To the Honorable the Senate of the State of Minnesota:

"I have the honor to acknowledge the receipt of the following resolution, passed by your honorable body, viz.: 'Resolved, that the Attorney General of this State be and is hereby requested to furnish his opinion for the use of this Senate upon the question as to the length of the terms of the Senators elected at the last general election in 1882.' The terms of the Senators elected in 1882 is [*sic*] fixed by the amendment to the constitution adopted in 1877. By this amendment the terms of the Senators were to be the same as theretofore prescribed, *until* the general election in 1878, at which time an entire new election of such officers was to be had. It then goes on to provide that 'the Senators chosen *at such election*, by districts designated by odd numbers,' should hold for two years, and those designated by even numbers, for four years; 'and *thereafter* Senators shall be chosen for four years,' except that there shall be an entire new election after each apportionment. It will be seen from this amendment that it is only such senators as are chosen by odd-numbered districts at the election of 1878 who are to hold for two years. Thereafter there is to be no difference in the term: all hold for four years. The language of this amendment is too plain to admit of doubt. The Legislature in proposing, and the people in adopting, this amendment, must be deemed to have meant just what the language used clearly imports. 'Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently, no room is left for construction. Possible and even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.' Cooley, Const. Lim. 68, 69. 'We are not at liberty to presume that the framers of the Constitution, or the people who adopted it, did not understand the force of language,' says Mr. Justice Bronson in People vs. Purdy, 2 Hill, 35. Mr. Justice Johnson, in Newell vs. People, 7 N. Y. 9, expresses the same idea in this language: 'Whether we are considering an

correct.

Petition denied.

agreement between parties, a statute, or a constitution, with a view to its interpretation, the thing which we are to seek is *the thought which it expresses*. To ascertain this, the first resort in all cases is to the natural signification of the words employed in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing, then that meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such a case there is no room for construction. That which the words declare, is the meaning of the instrument, and neither courts nor Legislatures have a right to add to or take away from that meaning.' I am, therefore, clearly of the opinion that the Senators elected in 1882, whether from odd or even numbered districts, hold for four years. [Italics in text.]

"February 27th, 1883. W. J. Hahn, Atty. Gen."