## VILLAGE OF McKINLEY AND OTHERS v. N. TED WALDOR, COMMISSIONER OF HIGHWAYS.

170 N. W. (2d) 430.

August 22, 1969—No. 41814.

*Hoag, Edwards, Edgerton, Theobald & Rieschl* and *Martin A. Rieschl,* for appellants.

*Douglas M. Head,* Attorney General, *Donn D. Christensen,* Deputy Attorney General, *Richard H. Kyle,* Solicitor General, and *Richard A. Hassel,* Assistant Attorney General, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment entered pursuant to an order of the district court denying plaintiffs' request for a permanent injunction prohibiting the state from a relocation of State Trunk Highway No. 35, which has been renumbered as Trunk Highway No. 135.

The trunk highway system in the State of Minnesota was established by the adoption of Minn. Const. art. 16 on November 2, 1920, since superseded by the present art. 16, which was adopted November 6, 1956, and became effective July 1, 1957. Pertinent to the inquiry here is § 1, which reads:

"Subject to the limitations of this article the state may establish, locate, construct, reconstruct, improve and maintain public highways and may assist political subdivisions in such work."

Originally there were 70 routes established by art. 16. These have not been changed. Route No. 35, involved in this litigation, reads as follows:

"Beginning at a point on Route No. 18 near Mille Lacs Lake and thence extending in a northerly direction to a point at Grand Rapids and thence extending in a northeasterly direction to a point at Ely, affording Aitkin, Grand Rapids, Hibbing,

Chisholm, Buhl, Mountain Iron, Virginia, Gilbert, McKinley, Biwabik, Aurora, Tower, and Ely and intervening and adjacent communities a reasonable means of communication, each with the other and other places within the state."

As originally established, Trunk Highway No. 35 ran through the village of McKinley. This village is described by the trial court as a "bedroom" community. It has a population of 408 and consists of about 100 homes and three businesses: A restaurant, a tavern, and a TV shop. There are no filling stations or any businesses directly connected with the traveling public in the village. There is a bus route running through the village. The present highway has two lanes and, between the villages of Biwabik and Gilbert, there are a number of dangerous curves.

Beginning in 1965, the commissioner of highways has considered the relocation of Highway 35 so as to establish a four-lane highway and eventually make it a part of the Cross Range Expressway, partly as a result of a request made by Jones & Laughlin Steel Corporation pursuant to Minn. St. 160.10.[1]

Trunk Highway No. 306 was added to the system by the legislature, under § 161.115, and was renumbered No. 306-135. The route as established by the legislature reads as follows:

"Route No. 306. Beginning at a point on Route No. 35 at or

---

[1] Minn. St. 160.10, subd. 1, reads: "When any road, including any street within a city, village, or borough, crosses mineral land and the road interferes with mining operations on the land, the owner or lessee of the land may notify the road authority of the interference and request that the road be relocated. The road authority shall, thereupon in the manner provided by law, relocate the road so as not to interfere with the mining operations. The relocated road shall be constructed to at least the engineering standards of the old road unless the road authority determines that such standards are not necessary for safety or for the convenience of public travel. All right of way needed for such relocation shall be provided by the owner or lessee of the land or shall be acquired by the road authority by gift, purchase, or other manner provided by law."

near Gilbert; thence extending in a general northeasterly direction to a point on Route No. 35 at or near Biwabik."

As relocated, Trunk Highway No. 135 (formerly No. 35) would bypass McKinley by a distance of about one mile from the center of town and a half mile from the edge of town. In order to provide access to the village the highway department proposes to improve County Road No. 20 and make it a part of the trunk highway system. This would mean that the residents of the village would have access to the new highway by driving over an improved road for a distance of about a half mile from the edge of the village and a mile from the center of the village.

Contending that the state has no power to relocate the highway so as to bypass the village of McKinley, the village and several of its residents commenced this action for an injunction. The trial court held that the relocation was within constitutional limits as providing a reasonable means of communication between McKinley and the other towns on the route. The only question of any relevance here is whether under this constitutional provision it is necessary to retain the highway as it was originally located, running through the village itself.

Article 16, § 2, reads in part:

"There is hereby created a trunk highway system which shall be established, located, constructed, reconstructed, improved and maintained as public highways by the state. Said trunk highway system shall consist of the trunk highway routes numbered 1 through 70 described in the constitutional amendment adopted November 2, 1920, the trunk highway routes added to said foregoing routes by the legislature prior to the effective date of this article, and such additional routes as may be added to the trunk highway system hereby created pursuant to authority in this article contained. The said highways shall extend as nearly as may be along the routes numbered 1 through 70 described in said constitutional amendment adopted November 2, 1920, and the routes described in any act of the legislature which has made or

will hereafter make a route a part of the said trunk highway system. The more specific and definite location of said routes shall be fixed and determined by such boards, officers or tribunals and in such manner as shall be prescribed by law, but in fixing such specific and definite routes there shall not be any deviation from the starting points or terminals set forth in said routes nor shall there be any deviation in fixing such routes from the various villages and cities named therein through which such routes are to pass.

\*    \*    \*    \*    \*

"Any route added by the legislature to the trunk highway system either prior or subsequent to the effective date of this article may be altered, amended, relocated, changed or removed from said system, as provided by law. *The definite location of said trunk highways numbered 1 through 70 heretofore fixed pursuant to this article may be thereafter changed and relocated as provided by law but no such change or relocation shall be authorized which would cause a deviation from the starting points or terminals set forth in said routes nor cause any deviation from the various villages and cities named therein through which such routes are to pass.*" (Italics supplied.)

There are no decisions that are of any help to us in the determination of this question. The only case that has considered anything approaching the question involved is State ex rel. Chase v. Babcock, 175 Minn. 103, 220 N. W. 408. That case involved the question of whether one of the designated trunk highways must run through a city of the first class. We held that inasmuch as cities of the first class are excluded from the routes of the trunk highways, running the highway to the edge of such city and then picking it up on the other edge was compliance with the constitutional mandate.

An examination of the constitutional descriptions for the 70 original routes indicates that in some cases the highway was intended to run through the town and in others not. There are essentially three methods of describing a route to be followed. In

some cases it is to be "at," in other cases "near," and in still others "at or near" the named town. We need not determine whether the use of these terms may require a highway originally located so as to run through a village or city to forever be retained there. In the Babcock case we said with respect to the construction of this constitutional amendment (175 Minn. 107, 220 N. W. 410):

"The rules governing the courts in construing articles of the state constitution are well settled. The primary purpose of the courts is to ascertain and give effect to the intention of the legislature and people in adopting the article in question. If the language used is unambiguous, it must be taken as it reads, and in that case there is no room for construction. The entire article is to be construed as a whole and receive a practical, common sense construction. It should be construed in the light of the social, economic, and political situation of the people at the time of its adoption, as well as subsequent changes in such conditions."

Applying this rule of construction to the constitutional provisions involved, it would seem clear that the plan of the highway department to relocate this highway and provide a suitable access of a comparatively short distance to an improved highway would satisfy the provision with respect to the constitutional Route No. 35. All that is required under this constitutional provision is that the village of McKinley be afforded a reasonable means of communication with the other villages and cities named in the route and other places within the state. When the highway is completed, the village will not only have access to a much better highway, but much of the danger of traffic passing through the village, on a highway that is now unsatisfactory for modern transportation, will be eliminated. What the constitutional provisions require is that the termini of the highway remain fixed, but we think that unless the constitution itself requires that the highway run through a village or city the

power lies with the commissioner of highways to relocate it to meet modern requirements of transportation. In a case involving language somewhat similar to art. 16, the Illinois courts, in Boyden v. Department of Public Works, 349 Ill. 363, 182 N. E. 379, came to the same conclusion. As a result we are convinced the trial court was correct in denying an injunction and its decision must be affirmed.

There is only one other question that needs consideration, and that is the claim that there is no guaranty that the state will not abandon County Highway No. 20 as an access to the relocated highway. We think there is no merit to this contention. The constitution requires that the village of McKinley be given reasonable communication with the other cities and villages on the route and other places within the state, and we cannot foresee that the state could abandon the access and still comply with this constitutional mandate.

Affirmed.